**JOSLYN et, Plaintiffs, v. AKRON (City), Defendants.**

Common Pleas Court, Summit County.

No. 205449.   Decided January 15, 1958.

Clarence May, Herbert S. Kreighbaum, for plaintiff.
Harry Van Berg, for defendant.

## OPINION

By CLANDE V. D. EMMONS, J.:

It is stipulated that the City of Akron owns and operates its own Municipal Water Plant; that it has entered into a contract to sell water to the Chrysler Plant in Twinsburg Township, located in the extreme northerly part of Summit County, Ohio; that permission for the construction of this water line in the highway was granted both by Summit County and Twinsburg Township; that the Chrysler Corporation is a private Company primarily engaged in the manufacture of automobiles; that the water that the City of Akron agreed to furnish Chrysler is a surplus product; that the plaintiffs own land abutting to the east of Route 106, which land extends for about 1400 feet on said highway and that the plaintiffs own to the center of said road subject to the public easement of vehicular and pedestrian traffic; that the main water line for service to the Chrysler Plant, was placed in the easterly side of said highway and in the land owned by the plaintiffs, without permission of the plaintiffs and without appropriation proceedings being had, and that the plaintiffs requested water service from said water main to their land (allotment) which service the City refused and as a result the plaintiffs asked the Court that the City of Akron be enjoined from causing any water to flow through said pipes and over and under these plaintiffs' property and that a mandatory injunction be issued against the City of Akron ordering the City to remove all of said pipe line from said premises and restoring possession of said premises to these plaintiffs.

The first question for the Court's determination is:—**DOES THE CITY HAVE THE RIGHT TO APPROPRIATE THIS LAND?**

It follows that if there could be no appropriation of this land by the City, then the City would be a continuing trespasser and the relief asked for in the prayer of the plaintiffs' petition would be granted.

**Article XVIII, Section 6, Ohio Constitution:—**

"Any municipality, owning or operating a public utility for the purpose of supplying the service or product thereof to the municipality or its inhabitants, may also sell and deliver to others * * * the surplus product of any * * * utility in an amount not exceeding in either case 50 per centum of the total * * * product supplied by such utility within the municipality."

This constitutional amendment was adopted September 3, 1912 and was a further extension of "Home Rule" by the municipalities of Ohio.

Billings v. Railway Co., 92 Oh St 478 at page 482 and 483, Justice Johnson said:—

"As stated by the Supreme Court of the United States in Mt. Pleasant v. Beckwith, 100 U. S. 514, 524: 'Counties, cities and towns are municipal corporations created by the authority of the legislature and they derive all their powers from the source of their creation, except where the Constitution of the State otherwise provides.' The manifest purpose of the amendment in 1912 was to alter this situation and to add to the governmental status of the municipalities. The people made a new distribution of governmental power."

Article XVIII, Section 4, Ohio Constitution:—

"Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or services of which is or is to be supplied to the municipality or its inhabitants, **and may contract with others for any such product or service. The acquisition of any such public utility may be by condemnation or otherwise * * *.**" (Emphasis by the Court.)

There is no question but that a company or municipal corporation supplying water to consumers or inhabitants is operating a public utility.

City's counsel in his brief stated,—

"The specific grants of authority in **Sections 4 and 6 of Article XVIII, Ohio Constitution** give a municipality the right to exercise the power of eminent domain for a public utility purpose. When read in conjunction with **Section 10 of Article XVIII, Ohio Constitution,** granting the power to appropriate land in excess of the public use, these sections contain all power of eminent domain necessary to accomplish the public purpose of owning and operating a water supply distribution system within and without the limits of the municipality. To grant the power to sell and deliver the surplus product to others and to deny the power to appropriate lands for the accomplishment of this purpose is to effectively deny the exercise of the right to sell and deliver the product at reasonable terms."

In **Dravo-Doyle Co. v. Village of Orrville, 93 Oh St 236,** the Court in its opinion on **page 244** stated:

"Authority given by the Constitution cannot be lessened by statute. There is no equivalent for a constitutional provision."

City of Mill Valley v. Saxton, City Treasurer, 106 Pacific Reporter 2nd-455

Syllabus 2:—

"If a city is given power to sell excess utility service, the means of performance whereby the service can be made and supplied are necessarily implied in the grant of power to sell."

City of Albuquerque v. Huning, 29 New Mexico 590 at page 593, the Court said:—

"In determining whether the power is to be implied, a more liberal construction is to be indulged in favor of a public corporation exercising the power strictly for the public benefit. 'Lewis, Eminent Domain (3rd Edition) Section 371. It is likewise to be remembered that the implied power is the more readily to be admitted whenever the same is

necessary in order to enable the public corporation to carry out the purpose of the grant, as in this case. Unless condemnation is allowed the city in this instance will be prevented absolutely from carrying out the establishment of the park by reason of its inability to agree with the owner on a voluntary purchase."

In the plaintiffs' reply brief much concern was expressed that the City had no right to appropriate this land because of the fact that the City was selling to the Chrysler Company, a private corporation. It is admitted that this water is surplus and there was testimony that there was not enough water to supply the wants of the people residing in and around this Township. It is not reasonable to say that because there is not enough water to supply the people living in the vicinity of the Chrysler Company, that the City of Akron must be compelled to keep this surplus. I believe the plaintiffs have lost track of the fact this is not a sale of water to the Chrysler Company primarily, but it is a means that the City has found to dispose of their surplusage and therefore such a transaction is for the public welfare and public use.

Paris Mountain Water Co. v. Greenville, 96 Southeastern 545, the Court said at page 550:—

"The power to acquire must be co-extensive with the right to have."

In the case of Rosenthal v. Cleveland, No. 663495 in the Common Pleas Court of Cuyahoga County, Ohio, Judge McNeill, sitting by assignment, held that The City of Cleveland has the right to make condemnation of private property outside the City of Cleveland either in connection with procuring a utility for the City of Cleveland or in supplying not over 50 per cent of their utility to other sub-divisions under contract.

In determining the question of the right of appropriation, the Court is mindful of **Section 19, Article I, Ohio Constitution,** which is:—

"Private property shall ever be held inviolate but subservient of the public welfare * * * and in all other cases where private property shall be taken for public use, a compensation therefor shall first be made in money * * *."

In the plaintiffs' brief, constant reference is made to the fact that in supplying water to the Chrysler Company, the City of Akron is not engaged in public use but a private one.

**159 Oh St 13, State, ex rel. Bruestle, City Solicitor, v. Rich, Mayor et al.**
Syllabus No. 2:—

"Under **Section 19, Article I, Ohio Constitution,** property taken for 'the public welfare' is regarded as property 'taken for public use.'"

Syllabus No. 4:—

"If the primary purpose for the exercise of the power of eminent domain is to acquire the property for the public welfare within the meaning of **Section 19, Article I, Ohio Constitution,** the power may be exercised even where there may be an incidental non-public use of the property or benefit from its taking."

It benefits the City of Akron and therefore aids the welfare of its citizenry that the surplus water produced by the Municipal Water Works of Akron be sold and by making this product available to new industries, it further benefits the people of this city and its environs by giving employment and security to many.

There is a claim made by the plaintiffs that where a city discriminates in the sale of its surplus water, it is no longer acting in its operation as a public utility. The plaintiffs claim that in serving only the Chrysler Company and not the inhabitants of that district, the City was discriminating in its service.

The Court is of the opinion that this contention is completely overcome by the last part of the 3rd syllabus in the case of **State, ex rel. Indian Hill Acres Inc., Appellee v. Kellogg et al, 149 Oh St 461:—**

Part of Syllabus No. 3:—

"In the absence of contract, the municipality, in selling and delivering any surplus product to others than the inhabitants thereof, does not become such a public utility as to be bound to serve indiscriminately all who may demand such service, but the municipality may sell and dispose of its surplus products in such quantities and in such manner as the council thereof determines to be in the best interest of the municipality and its inhabitants."

**19 O. Jur., Section 308, page 729:—**

"Although injunction, in cases of taking private property for public use, rests not merely on irreparable injury, but also on the constitutional guarantee, there must be substance, weight, and merit to invoke equitable intervention; and it is to be considered in this connection, as in other cases, that equitable remedies are not entirely matters of absolute right, but there are elements of discretion and grace which apply to them.

"Equity is never inflexible in the application of a general rule, even with regard to constitutional provisions, if practical justice can be done by modifying the rule, **and the rights of the public and the private individual can both be substantially protected.** A Court exercising equitable jurisdiction, in determining an application for an injunction, must regard not only the rights of the complainant which are sought to be protected, but the injuries which may result to the defendant and to others from granting the injunction * * *." (Emphasis by the Court.)

Under the existing circumstances the Court is of the opinion that the City of Akron had the right to appropriate private property for the purpose of running a water line to the Chrysler Corporation and that such an act is one for the public welfare and is a right inherently acquired from the Ohio Constitution.

**WHAT ARE THE EQUITIES IN THIS CASE?**

The City has already installed a water line on the part of the plaintiffs' property that was dedicated for a street. By law the plaintiffs own to the center of the street subject to the easement of travel, etc. If the road were ever vacated, the plaintiffs would acquire the one half of the road contiguous to their property. The City without bringing appropriation proceedings laid this water line, with knowledge on the part of the plaintiffs, who saw fit not to bring injunctive proceedings or other action until the installation was complete. It is true that the City trespassed on the plaintiffs' land but what was their damage? An 18 inch pipe laid 1400 feet along the edge of the road, below the frost line.

**WAS THERE AN IRREPARABLE DAMAGE DONE TO THE PLAINTIFFS?**—this Court thinks not.

## IS THE TRESPASS OF SUCH CONSEQUENCE THAT A MANDATORY INJUNCTION SHOULD BE GRANTED COMPELLING THE CITY TO TEAR UP THIS PIPE LINE?

Balancing the equities in this case the Court finds that even though there has been a trespass in this case on the part of the City of Akron, nevertheless such trespass caused no irreparable damage to the plaintiffs; while the City defendant would be put to a great expense in tearing up some 1400 feet of established water line.

Where the granting of an injunction will cause great injury to the defendants and a serious inconvenience to the public without a corresponding advantage to the complainant, it will be denied and the owner relegated to his remedy at law. See 33 **Oh Ap 414—Occo Realty Company v. Railway Company.**

**Sec. 743.12 R. C.**—grants authority to a municipal corporation to build water lines outside of its limits and for such purpose to make use of the public roads, and while the plaintiffs own to the center of this road, it is such a main artery of travel that it is a reasonable supposition to say that there will be no vacation of this road so as to allow the plaintiffs to exert private control over this land.

It would be a most inequitable pronouncement in this case for the Court to entertain and order a mandatory injunction to issue, creating great expense to the City in tearing up the water line, causing a cessation of work at the Chrysler plant because of lack of water and creating unemployment thereby to be had to hundreds of its employees who are citizens of Akron or its environs, solely because there was a "tip toe" trespass upon property which has a slight potential value to the plaintiffs.

Another reason this Court will not entertain a mandatory injunction is that the plaintiffs were apprised at the very beginning that the City was laying a pipe line on their property in the road, and even though there was some negotiations to settle this matter, nothing was done in the way of court action until the installation had been completed.

**James Goodin & Samuel H. Goodin v. The Cincinnati and White Water Canal Co. and others, 18 Oh St 169, Syllabus 1:**—

"The owner of land, who stands by, without objection, and sees a public railroad constructed over it, can not, after the road is completed, or large expenditures have been made thereon, upon the faith of his apparent acquiescence, reclaim the land, or enjoin its use by the railroad company.

"In such case there can only remain to the owner a right of compensation."

What better example of laches do we have than in the present case? It is one of the principles of equity that it aids the vigilant, and not those who slumber on their rights. Laches is defined as such failure to assert a right as, taken in connection with lapse of time and other circumstances, causes prejudice to the adverse party and therefore operates as a bar in a court of equity. However, the Court has not seriously considered this claim for had the plaintiffs been diligent in asserting what rights they might have had, nevertheless this Court would still

have allowed this pipe line to be laid in its present position and would have suggested a suit for damages.

In conclusion the Court is of the opinion that the City of Akron has the right to appropriate land under the circumstances existing in this case; that because there is no irreparable damage, the plaintiffs have an adequate remedy at law and that the defense of laches on the part of the plaintiffs has been established by the defendant City even though this defense was not necessary.

The Court by reason of its conclusion will deny the prayer of the petition asking for a mandatory injunction and suggests that the plaintiffs either proceed in action against the City for damages, or that the City bring a belated appropriation proceeding against these present plaintiffs.