BRITT ET AL., APPELLANTS AND CROSS-APPELLEES, *v.* CITY OF COLUMBUS ET AL., APPELLEES and CROSS-APPELLANTS.

2

(No. 73-357—Decided April 3, 1974.)

4

*Messrs. Topper, Alloway, Goodman, Deleone & Duffey* and *Mr. John J. Duffey,* for appellants and cross-appellees.

*Mr. James J. Hughes, Jr.,* city attorney, *Mr. Robert A. Bell* and *Mr. James R. Kirk,* for appellees and cross-appellants.

STEPHENSON, J.   The novel issue this appeal presents is whether a municipality is constitutionally empowered to appropriate property outside the municipality for the purpose of extending, outside the limits of the municipal corporation, its public utility facilities located within the municipality in order to sell excess public utility products or services, in this case sewage services, solely to nonresidents. The City asserts, in support of the judgment of the Court of Appeals, that such power is granted to it by Sections 3, 4 and 6 of Article XVIII of the Ohio Constitution.* Since the

---

*The sections of Article XVIII pertinent to this appeal are the following:

*Section 3.*  "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

*Section 4.*  "Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service.  The acquisition of any such public utility may be by condemnation or otherwise, and a municipality may acquire thereby the use of, or full title to, the property and franchise of any company or person supplying to the municipality or its inhabitants the service or product of any such utility."

*Section 6.*  "Any municipality, owning or operating a public utility for the purpose of supplying the service or product thereof to the municipality or its inhabitants, may also sell and deliver to others any transportation service of such utility and the surplus product of any other utility in an amount not exceeding in either case fifty percent of the total service or product supplied by such utility within the municipality, provided that such fifty percent limitation shall not apply to the sale of water or sewage services."

6

City relies solely upon a constitutional grant of power, whether the City could appropriate property beyond its municipal limits for such purposes pursuant to authority granted to municipalities by the General Assembly in R. C. Chapter 719 is not an issue in this appeal.

The importance to the City of possessing such authority by constitutional, rather than legislative, grant is that each of the constitutional sections relied upon has been held by this court to be self-executing and if eminent domain authority for the purposes here claimed exists by virtue of such sections the authority conferred is beyond the pale of the General Assembly to limit, restrict, condition, or otherwise control. As to Section 3, see *State, ex rel. Bruestle,* v. *Rich* (1953), 159 Ohio St. 13. As to Section 4, see *Swank* v. *Shiloh* (1957), 166 Ohio St. 415; *Euclid* v. *Camp Wise Assn.* (1921), 102 Ohio St. 207; *Bd. of Edn.* v. *Columbus* (1928), 118 Ohio St. 295; *Dravo-Doyle Co.* v. *Orville* (1915), 93 Ohio St. 236. As to Section 6, see *State, ex rel. McCann,* v. *Defiance* (1958), 167 Ohio St. 313.

This court has never framed an all-inclusive definition of the term "all powers of local self-government" appearing in Section 3 of Article XVIII. In the context of specific cases before it, the term has been stated to mean "* * * such powers of government as, in view of their nature and the field of their operation, are local and municipal in character" (*State, ex rel. Toledo,* v. *Lynch* [1913], 88 Ohio St. 71, 97); "* * * the powers referred to are clearly such as involve the exercise of the functions of government, and they are local in the sense that they relate to the municipal affairs of the particular community" (*Fitzgerald* v. *Cleveland* [1913], 88 Ohio St. 338, 344), "the phrase 'all powers of *local* self-government' as used * * * [in Section 3] means the power of self-government in all matters of a purely local nature" (*State, ex rel. Arey,* v. *Sherrill* [1944], 142 Ohio St. 574).

The power of eminent domain is a power of local self-government under Section 3. *State, ex rel. Bruestle,* v. *Rich,*

*supra.* It does not follow, however, that the power of eminent domain beyond the limits of a municipality, as opposed to the power of eminent domain within the municipality, is a power of local self-government. It is self-evident that the exercise of a power to condemn beyond a municipality transcends matters of "purely local nature."

The assertion, that the power of eminent domain by a municipality beyond its corporate limits, with the attendant right to physically invade other political subdivisions of the state, is a power of "local self-government," is clearly refuted by the decision of this court in *Beachwood* v. *Bd. of Elections* (1958), 167 Ohio St. 369, holding that detachment proceedings of a territory from a municipality is not a power of local self-government. The opinion, at page 371, states, in the portion relevant here:

"The power of local self-government granted to municipalities by Article XVIII relates solely to the government and administration of the internal affairs of the municipality, and, in the absence of statute conferring a broader power, municipal legislation must be confined to that area. (See *Prudential Co-Operative Realty Co.* v. *City of Youngstown*, 118 Ohio St. 204, 160 N. E. 695.) Where a proceeding is such that it affects not only the municipality itself but the surrounding territory beyond its boundaries, such proceeding is no longer one which falls within the sphere of local self-government but is one which must be governed by the general law of the state.

"To determine whether legislation is such as falls within the area of local self-government, the result of such legislation or the result of the proceedings thereunder must be considered. If the result affects only the municipality itself, with no extra-territorial effects, the subject is clearly within the power of local self-government and is a matter for the determination of the municipality. However, if the result is not so confined it becomes a matter for the General Assembly."

Since, in *Beachwood,* only Sections 3 and 7 of Article XVIII were under consideration, the last sentence in the

above quotation must be considered in light of any other specific grants of power in Article XVIII, such as in Sections 4 and 6.

For the reasons above stated, we hold that no power of eminent domain beyond the geographical limits of a municipality is included in the powers of local self-government granted to municipalities by Section 3, Article XVIII.

Section 4, Article XVIII, is a constitutional grant of power to a municipality to "acquire, construct, own, lease and operate within or without its corporate limits, any public utility *the products or service of which is or is to be supplied to the municipality or its inhabitants.*" A sewerage system owned and operated by a municipality for the benefit of its inhabitants is a public utility within the meaning of "public utility" in Sections 4 and 6, Article XVIII. *Mead-Richer* v. *Toledo* (1961), 114 Ohio App. 369. That it was so intended is evidenced by the removal of sewage services from the 50 percent limitation in Section 6 by amendment in 1959.

Specific condemnation authority in the acquisition of a public utility is given in the second sentence of Section 4, as to the property and franchise of any company or person "supplying to the municipality or its inhabitants the service or product of any such utility." Whether it was intended by the framers of this amendment, and the people in its adoption, to restrict the express grant of condemnation authority to prevoiusly existing privately owned public utilities, and leave to implication condemnation authority to implement the power conferred in the first sentence, it is settled that a municipality possesses eminent domain authority beyond the municipality for the purpose of establishing a public utility. *Blue Ash* v. *Cincinnati* (1962), 173 Ohio St. 345.

Since the grant of power to a municipality to "acquire, construct, own, lease and operate within or without its corporate limits" is expressly restricted to public utilities, the products or services of which is or is to be supplied to the municipality or its inhabitants, the exercise of eminent do-

main authority for such purpose under Section 4 is necessarily likewise limited.

In the brief of the City, emphasis is placed upon the portions of Section 4 providing ''within or without its corporate limits'' and ''and may contract with others for any [public utility service].'' Although not specifically articulated, the City appears to be suggesting that since, by the express grant in Section 4 and the decisions of this court that municipalities possess eminent domain authority beyond the municipality, the two above-quoted portions of Section 4 grant eminent domain authority beyond the municipality with respect to contracts for the sale of its utility services or products to nonresidents. See *Joslyn* v. *Akron* (Com. Pleas 1958), 77 Ohio Law Abs. 370, cited by the City, which appears to substantially adopt such view. However, we need not pursue that argument, since it is foreclosed by the decisions of this court holding that the power to ''contract with others for any such product or service'' confers authority to contract solely for the *purchase* by the municipality of utility products or services for its inhabitants. *State, ex rel. Mitchell,* v. *Council of Milan* (1938), 133 Ohio St. 499; *Ohio River Power Co.* v. *Steubenville* (1919), 99 Ohio St. 421; *Ohio Power Co.* v. *Attica* (1970), 23 Ohio St. 2d 37.

We conclude, therefore, that since the power of eminent domain claimed in this appeal is for purposes other than supplying a public utility product or service to a municipality or its inhabitants, such claimed power is not within the eminent domain authority granted municipalities by Section 4.

The remaining section of Article XVIII which is claimed to empower municipalities to condemn property beyond the municipality is Section 6. By this section, the framers of the constitutional amendment recognized that, in the operation of a public utility by a municipality for its inhabitants, surplus products or services might be created which could, advantageously to the municipality, be disposed of beyond the corporate limits of the municipality.

*State, ex rel. Wilson,* v. *Hance* (1959), 169 Ohio St. 457.

It is evident, however, as an examination of Section 6 discloses, that no express power of eminent domain was included to effect such sale and delivery. The City asserts that implementation of the power "to sell and deliver to others" requires the *selling* municipality to extend its facilities, and that eminent domain authority is necessarily required for such purpose. Yet, there is nothing said in Section 6 to indicate that the selling municipality is constitutionally mandated to provide such facilities.

The compelling necessity of eminent domain authority beyond a municipality for implementation of the municipality's constitutional grant or power to "acquire, construct, own, lease and operate within or without its corporate limits," to provide services to the municipality or its inhabitants, is self-evident. The power of eminent domain authority in the sale of surplus public utility products or services to noninhabitants, although undoubtedly economically and, possibly, politically advantageous with respect to annexation, rests upon no comparable compelling necessity.

With respect to the implication of a power of eminent domain in a constitutional grant where the right is not expressly conferred, this court stated in *Blue Ash* v. *Cincinnati, supra* (173 Ohio St. 345, 352), the following:

"Implication must arise only from the language used; and a taking by implication 'can be only to the extent of the necessity, and that necessity must arise from the nature of things over which the corporation desiring to take has no control, and not from a necessity created by such corporation for its convenience or economy.' McQuillin, Municipal Corporations (3 Ed.), 402, Section 32.67."

To adopt the argument asserted by the City with respect to Section 6, we would necessarily have to conclude that the framers of Section 6, and the people in its adoption, intended to leave to implication a conferral of power upon a municipality of substantial impact beyond the municipality, with the attendant right of the municipality to exer-

cise such power for its own benefit unfettered by any legislative control. The framers of this amendment were cognizant of the need of condemnation authority in the area of municipal ownership of public utilities, as evidenced by Section 4, and their silence upon that question in Section 6 is indicative that a conferral of power, such as is here claimed, was not intended, and we so hold.

Since we hold that Sections 3, 4 and 6 of Article XVIII do not confer any constitutional power of eminent domain for the purpose here sought, we do not reach or consider the issue raised by the cross-appeal as to whether such power is dependent upon a prior sale or contract of sale, that issue now being moot.

For the foregoing reasons, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

O'NEILL, C. J., CORRIGAN, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.

STEPHENSON, J., of the Fourth Appellate District, sitting for HERBERT, J.