CITY OF ST. MARYS, Appellee,

v.

DAYTON POWER & LIGHT COMPANY, Appellant.

[Cite as *St. Marys v. Dayton Power & Light Co.* (1992), 79 Ohio App.3d 526.]

Court of Appeals of Ohio,
Auglaize County.

No. 2-91-12.

Decided May 4, 1992.

528

*Kraig E. Noble,* Law Director, for appellee.

*Benjamin F. Yale* and *Ann H. Stewart,* for appellant.

EVANS, JUDGE.

This is an appeal from the judgment of the Common Pleas Court of Auglaize County finding that the city of St. Marys, appellee, had the right under Section 4, Article XVIII of the Ohio Constitution to appropriate a part of an easement owned by Dayton Power & Light Company ("DP & L"), appellant.

In an effort to provide sewer service to the residents of unincorporated areas of Auglaize County, specifically residents of the Grand Lake St. Marys Southeast Sewer District, the Auglaize County Commissioners planned to build a sewage retention basin close to the well fields which provide drinking water to the inhabitants of St. Marys. The effluent from this lagoon would have drained into the Miami and Erie Canal, a slow moving waterway that flows directly through the municipality.

This proposed plan created environmental concerns for residents of St. Marys. These concerns provided the impetus for St. Marys and the Auglaize County Commissioners to enter into an agreement whereby the commissioners would provide a network of sewage lines running to a common point of collection. At this point, the county would construct a sewage lift station where the raw sewage would be pumped through a forced pressure main to the city's sewage treatment facility, thereby avoiding the environmental concerns of raw sewage sitting in a lagoon above the city's drinking water supply or its effluent flowing through St. Marys. The county commissioners agreed to transfer legal title to the lift station and force main to St. Marys

upon its completion. St. Marys would bill the county for the treatment of the sewage.

To provide electricity to the pumps in the lift station, St. Marys constructed a transmission line which extended from the lift station to existing lines owned by the city. St. Marys owned all of the right of way on which the new lines were hung, except for a gap of approximately six hundred feet. The city considered several alternatives to close this gap and finally determined the best route involved the use of the south half of an easement owned by DP & L.

DP & L owns property situated outside the city on which DP & L located its St. Marys substation. Along the south edge of this property and contiguous to it, DP & L owns a twenty-five foot wide easement which stretches between the Norfolk & Southern Railroad on the west and County Road 66A on the east. While DP & L does not have any utility poles or electric lines located directly on this easement, it does have electric lines located on the south edge of its substation property. DP & L claims it bought the adjacent easement in order to provide access to these power lines, and to provide a "buffer" along the south side of the power lines to prevent property owners or others from installing buildings or allowing vegetation to grow up around, and interfere with the electric lines.

St. Marys attempted to negotiate with DP & L for the right to erect its power lines on the south half of DP & L's easement. After these negotiations proved unsuccessful, the city council, on December 10, 1990, passed a resolution expressing its intent to appropriate the southern twelve and a half feet of the easement owned by DP & L. On December 27, 1990, the city council passed Ordinance No. 90–92 authorizing the appropriation. On January 25, 1991, St. Marys filed a complaint for appropriation in the Common Pleas Court of Auglaize County. DP & L answered the complaint and counterclaimed against the city on February 15, 1991. In response to the counterclaim, which challenged the necessity of the appropriation, St. Marys filed a responsive pleading on February 19, 1991. The court assigned the matter to be heard on Friday, March 1, 1991.

On the day of the hearing, DP & L filed a motion with the court for leave to amend its answer. After a lengthy discussion, this request was denied and the court began hearing testimony. The hearing was continued over the weekend and reconvened on Tuesday, March 5, 1991. By a journal entry dated March 12, 1991, the trial court found the appropriation of part of DP & L's easement to be necessary and within the sound discretion of the municipality. On March 28, 1991, a jury awarded compensation in the amount of $1,000 to DP & L for the land appropriated.

DP & L appeals the trial court's decision granting the appropriation and asserts four assignments of error.

### FIRST ASSIGNMENT OF ERROR

"The lower court erred in holding that the City has the right to appropriate the property outside of its corporate limits under Article XVIII, Section 4 of the Ohio Constitution in order to serve noninhabitants."

Section 4, Article XVIII of the Ohio Constitution grants the authority by which a city may acquire a public utility or contract for utility services and states:

"Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service. The acquisition of any such public utility may be by condemnation or otherwise, and a municipality may acquire thereby the use of, or full title to, the property and franchise of any company or person supplying to the municipality or its inhabitants the service or product of any such utility."

In this assignment of error appellant claims the lift station benefits county residents rather than city residents and therefore this appropriation violates the Ohio Constitution. To support its proposition, appellant cites *Britt v. Columbus* (1974), 38 Ohio St.2d 1, 67 O.O.2d 1, 309 N.E.2d 412, where the Supreme Court held that this same provision of the Ohio Constitution "does not confer eminent domain power upon a municipality to appropriate property beyond its corporate limits in order to extend its municipal sewerage system outside the municipality for the purpose of providing sewage [facilities] to noninhabitants of the municipality."

Appellee responds by claiming that, pursuant to the agreement between it and the county commissioners, the county agreed to transfer legal title to the lift station to appellee. And because appellee thereby owns the property to which it is attempting to supply electric power, the appropriation will permit the municipality to provide electric service to its own facility. Appellee also claims it receives the environmental benefits resulting from not having the county build a sewage retention basin near its source of drinking water. Appellee cites *Bd. of Delaware Cty. Commrs. v. Columbus* (1986), 26 Ohio St.3d 179, 26 OBR 154, 497 N.E.2d 1112, and claims an appropriation which only indirectly benefits the municipality is permissible and in conformity with the intent and purpose of Section 4, Article XVIII of the Ohio Constitution.

Essentially these two theories turn on the answer to the question of whether the power lines supplying the lift station were a part of the overall

construction of the sewer project, or a project separately undertaken by appellee to supply its property with electrical power. The trial court recognized this difference when it stated:

"The issue therefore presented on first blush seems to be one as to whether the Court should look to who is actually using the electricity, i.e. the city owned sewage treatment facility; or who are the ultimate users of the entire project for which the city is attempting to run electricity to, i.e. the sewage treatment line for the benefit of the non-inhabitants."

The trial court however, rejected this analysis as being too narrow and instead considered the purpose of the appropriation to be the elimination of the potential environmental concerns facing the city and the county as they attempted, through mutual cooperation, to resolve the various sewage treatment problems. The court found the environmental benefits received by appellee and its inhabitants to sufficiently differentiate the present case from *Britt, supra,* where the benefit of the appropriation by the city of Columbus was directly serving inhabitants of the village of Dublin.

■ We do not agree with the trial court's analysis which focuses on the environmental benefits to be received by appellee and its inhabitants. We find such benefits to be entirely too nebulous to support the appropriation. The record on appeal demonstrates only that the environmental concerns served as the motivation for appellee and the Auglaize County Commissioners to enter into the agreement to build the sewage lift station. The record does not show that, had the sewage retention basin been constructed, pollution of the city's water wells would have followed. Thus, appellee's reliance on *Bd. of Delaware Cty. Commrs., supra,* which holds the appropriation is permissible even though the municipality and its inhabitants would be only indirectly served by the operation of the lift station, is misplaced.

■ By focusing on the environmental benefits, the trial court made no specific finding whether appellee's erection of the power lines was an integrated part of the overall construction of the lift station. We conclude, however, that it was. Electric service to power the main pump is an integral part of the county's construction and completion of such a project.

By concluding electric service was an integral part of the construction of the lift station, we find it necessary to apply the rule announced in *Britt, supra.* Because *Britt* prohibits appellee from using the power contained in Section 4, Article XVIII of the Ohio Constitution to appropriate land for the purpose of installing a sewage line outside the municipal limits, when such a sewage line directly serves noninhabitants of the city, it therefore follows that appellee cannot appropriate an easement for the purpose of running electric

lines to a lift station which is an integral part of a sewer project specifically serving only noninhabitants of the municipality. The fact that title to the lift station was granted to appellee, and appellee thereby owns the lift station, does not change this result.

We find that the trial court erred in finding the appropriation by appellee to be permissible under Section 4, Article XVIII of the Ohio Constitution. This however, does not mean that the trial court reached an incorrect result. The decision in *Britt* affects only the constitutional authority of a municipality to appropriate property outside its corporate limits. Because the city in *Britt* relied solely on the constitutional grant of power, the application of R.C. 719.01 and 719.02 to the municipality's appropriation was not an issue in that appeal.

■ In the present case, appellee could have elected to proceed under the authority granted by either the Ohio Constitution or R.C. 719.01 and 719.02. Appellee's complaint for appropriation did not limit the basis of authority by which the appropriation was being made. Rather, appellee stated it was acting under the authority of both the Constitution and laws of the state of Ohio.

R.C. 719.01 and 719.02 provide the statutory authority by which a municipal corporation may appropriate property. R.C. 719.01 provides in relevant part:

"Any municipal corporation may appropriate, enter upon, and hold real estate within its corporate limits:

"* * *

"(J) For sewers, drains, ditches, public urinals, bathhouses, water closets, and sewage and garbage disposal plants and farms;

"(K) For natural and artificial gas, electric lighting, heating, and power plants, and for supplying the product thereof[.] * * *"

R.C. 719.02 permits a municipality to appropriate property outside the limits of the municipal corporation for any of the purposes identified in R.C. 719.01, provided the appropriation is "reasonably necessary."

Prior to the adoption of Section 4, Article XVIII of the Ohio Constitution in 1912, the only power by which a municipality could appropriate property on which to place a public utility outside of its territorial limits, was derived by legislative grant from the General Assembly. *Euclid v. Camp Wise Assn.* (1921), 102 Ohio St. 207, 131 N.E. 349. The addition of Section 4, Article XVIII to the Ohio Constitution provided an additional source of authority by

which a municipality may appropriate property.[1] We therefore conclude that, while appellee's appropriation of part of appellant's easement cannot be sustained under Ohio's Constitution, we must also examine whether it would be permissible under R.C. 719.01 and 719.02.

The only requirement for appropriating property outside the municipal limits under the statutes is that the taking be "reasonably necessary." R.C. 719.02. Such was the finding of the trial court when it stated: "[T]he appropriation sought is necessary and is within the sound discretion of the municipality[.]" Thus, the appropriation was permissible under the authority granted by statute.

While the trial court erred in its failure to apply *Britt*, it did not reach an incorrect result in allowing the appropriation. A reviewing court will not reverse a correct judgment simply because the lower court assigned erroneous reasons as the basis for the judgment. *Taylor v. Yale & Towne Mfg. Co.* (1987), 36 Ohio App.3d 62, 63, 520 N.E.2d 1375, 1376. See, also, *Agricultural Ins. Co. v. Constantine* (1944), 144 Ohio St. 275, 284, 29 O.O. 426, 430, 58 N.E.2d 658, 663. Appellant's First Assignment of Error is therefore overruled.

## SECOND ASSIGNMENT OF ERROR

"The lower court erred by holding that the City has the power to appropriate property outside its municipal limits already dedicated for public use."

Appellant asserts a variety of arguments in support of this alleged error. Most notably, appellant argues a first in time, first in right theory is to be applied when a public entity attempts to appropriate property that has already been appropriated for another public use. Appellant bases this postulation on *Richmond Hts. v. Bd. of Cty. Commrs.* (1960), 112 Ohio App. 272, 11 O.O.2d 475, 166 N.E.2d 143, paragraph one of the syllabus, where the court held:

"As a general rule, property already devoted to a public use cannot be taken for another public use which will totally destroy or materially impair or interfere with the former use, unless the intention of the Legislature that it should be so taken has been manifested in express terms or by necessary implication, mere general authority to exercise the power of eminent domain being in such case insufficient regardless of whether the property was acquired by condemnation or purchase."

---

1. For an in-depth analysis of the extraterritorial eminent domain power of a municipality, see Vaubel, Municipal Home Rule in Ohio (1976), 3 Ohio North.L.Rev. 1, 422–428, 1382–1394 and 1529–1532.

This holding is not an all-inclusive prohibition of every taking of property already appropriated to a public use. Rather, it precludes such takings only when the use for which the property was originally acquired will be totally destroyed or materially impaired.

In arguing against the appropriation, appellant complained that granting the appropriation would interfere with its right of ingress and egress to service and maintain the electric lines located on its substation property adjacent to the easement. Appellant argued the appropriation would hinder its right to prevent others from building or otherwise using the easement. Appellant also asserted there were other routes available on which appellee could erect its power lines without impairing the use of appellant's easement.

The trial court was not persuaded by these arguments. The court made no finding that the use to which appellant was putting the property would be totally destroyed or materially impaired as a result of the appropriation. Rather, the court ruled that the city council of St. Marys did not abuse its discretion in adopting Ordinance No. 90–92 which authorized the appropriation and expressed the necessity to make the appropriation.[2]

We find no error in the court's determination that appellant failed to meet its burden of proving appellee abused its discretion or lacked necessity to make the appropriation.[3] We further find there is evidence on the record to indicate that the appropriation would not materially impair or totally destroy appellant's use of the easement. For example, evidence at the hearing indicated appellant would still be able to service its power lines and poles from its substation property. Appellee was not attempting to appropriate the whole twenty-five foot easement, but only the southern twelve and a half feet. Appellant would still own the north half of the easement from which it has

---

**2.** A trial court, in determining and resolving the issues raised in an appropriation proceeding, is required to accord great deference to the resolution of the legislative body in making the appropriation. The court is limited to determining whether that body abused its discretion or acted in bad faith. See *East Cleveland v. Nau* (1931), 124 Ohio St. 433, 179 N.E. 187; *Branford Village Condominium Unit Owners' Assn. v. Upper Arlington* (1983), 12 Ohio App.3d 120, 12 OBR 440, 467 N.E.2d 542.

**3.** R.C. 163.09(B) places the burden of proof on the property owner by stating in part: "When an answer is filed pursuant to section 163.08 of the Revised Code and any of the matters relating to the right to make the appropriation, the inability of the parties to agree, or the necessity for the appropriation are specifically denied * * * the court shall set a day * * * to hear such questions. Upon such questions, the burden of proof is upon the owner. A resolution or ordinance of the governing or controlling body, council, or board of the agency declaring the necessity for the appropriation shall be prima-facie evidence of such necessity in the absence of proof showing an abuse of discretion by the agency in determining such necessity. * * *" See, also, *Ohio Edison Co. v. Carroll* (1984), 14 Ohio App.3d 421, 423, 14 OBR 540, 542, 471 N.E.2d 825, 827.

access to the lines located on its substation property. Also, appellee's appropriation of the southern half of appellant's easement will not materially impair or interfere with the former use because appellee's use of the property will be similar to that of appellant with similar maintenance required. Thus, appellant's purpose of locating a "buffer" on either side of its lines in order to prevent vegetation from growing around the lines is preserved in spite of the appropriation.

Appellant's Second Assignment of Error is overruled.

## THIRD ASSIGNMENT OF ERROR

"The lower court erred to the prejudice of the Appellant by denying Appellant's leave to file an amended answer."

■ Appellant claims the trial court abused its discretion because amendments to pleadings should be freely permitted and the interests of justice required the trial court to allow appellant to amend its answer in order to protect its property interests.

Civ.R. 15 governs amending and supplementing pleadings and provides in part:

"(A) Amendments. A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed on the trial calendar, he may so amend it at any time within twenty-eight days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires. * * * "

In the case before us, appellee filed a responsive pleading to the charges raised in appellant's counterclaim and the matter was proceeding to hearing when the motion for leave to amend the answer was filed. Thus, according to Civ.R. 15(A), appellant could only amend its answer if granted leave by the trial court. The denial of leave to amend a pleading rests within the sound discretion of the trial court. *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 175, 63 O.O.2d 262, 269, 297 N.E.2d 113, 122; *DiPaolo v. DeVictor* (1988), 51 Ohio App.3d 166, 170, 555 N.E.2d 969, 973, motion to certify overruled in (1988), 39 Ohio St.3d 720, 534 N.E.2d 350. Its denial will not be disturbed on appeal absent an affirmative showing of an abuse of discretion. *Solowitch v. Bennett* (1982), 8 Ohio App.3d 115, 116, 8 OBR 169, 170, 456 N.E.2d 562, 563, motion to certify overruled in (Apr. 13, 1983), No. 83–138.

In the present case, the summons and complaint were served upon appellant on January 30, 1991. From this date, appellant had until February 27, 1991 to

consider, draft and file its answer. Appellant however, did not utilize all of the time allotted by the rule and filed its responsive pleading on February 15, 1991. This pleading answered the complaint, asserted three defenses and also counterclaimed against appellee. The three defenses asserted by appellant claimed: (1) the complaint failed to state a claim upon which relief could be granted, (2) the attempted appropriation was illegal, and (3) appellee failed to join necessary parties. After the answer was filed, the trial court, pursuant to R.C. 163.09(B), scheduled a hearing on March 1, 1991.[4] The court, in an effort to provide the parties with as much preparation time before trial as the statute would allow, scheduled the hearing to begin fourteen days after appellant's answer was filed.[5]

We note that appellant's motion for leave to file its amended answer was file stamped at 2:10 p.m. on the day the hearing began. The record contains comments made by the trial court indicating this filing took place approximately twenty minutes before the commencement of the hearing. The amended answer, which was proffered for the record, asserted eleven defenses including new and complex issues such as alleged violations of appellant's equal protection rights and the unconstitutionality of R.C. 743.40.

We find no abuse of discretion in the trial court's refusal to allow appellant to raise for the first time an assortment of eleventh hour defenses. Allowing appellant to amend its answer only minutes before the commencement of the hearing would have worked an unfair prejudice against the appellee. Also, the appropriation would have been delayed and alternate plans would have been required in order to energize the lift station.[6]

Appellant claims the additional defenses were not discovered until it hired local counsel only three days prior to the hearing. This argument is meritless. There is evidence that appellant had been negotiating with appellee over the possible sharing of the easement and was on notice that the complaint for appropriation would be filed. Appellant was represented by in-house counsel

---

**4.** R.C. 163.09(B) states in part:

"When an answer is filed pursuant to section 163.08 of the Revised Code * * * the court shall set a day, not less than five or more than fifteen days from the date the answer was filed, to hear such questions. * * *"

**5.** The trial court did not schedule the trial to begin on the fifteenth day from when the answer was filed because that day was a Saturday.

**6.** In arguing against allowing the amended answer to be filed, appellee stated that time was of the essence in that if the lift station was not operational by a certain date, the Ohio Environmental Protection Agency would begin assessing fines against the county. Appellant countered this argument by attempting to show that other means of energizing the lift station existed, namely purchasing electricity from it. The court however, was not persuaded and denied appellant leave to amend its answer.

who filed the original answer. It was within appellant's power to seek additional counsel at an earlier date or spend additional time researching Ohio's appropriation laws prior to filing its answer.

We are also of the opinion that the trial court was endeavoring to comply with the mandate of R.C. 163.09(B) which directed that a hearing be held within a maximum of fifteen days. The statute required an expedited hearing on the merits of the complaint and therefore, did not permit the trial court to delay conducting such a hearing simply because appellant failed to adequately prepare in a timely fashion.

We are cognizant of the Supreme Court's opinions in *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 63 O.O.2d 262, 297 N.E.2d 113, and *Hoover v. Sumlin* (1984), 12 Ohio St.3d 1, 12 OBR 1, 465 N.E.2d 377, where the court stated that motions for leave to amend a pleading made pursuant to Civ.R. 15(A) should be freely granted when justice so requires. In the present case however, justice would not have been served by the trial court's granting appellant's belated request to amend its answer. The trial court did not err by refusing to grant appellant's motion to amend its pleading.

Appellant's Third Assignment of Error is overruled.

## FOURTH ASSIGNMENT OF ERROR

"The lower court erred in granting Appellee's easement by taking into consideration matters not within Appellee's specifically stated purpose for requesting such an easement."

R.C. 163.05 requires all complaints for appropriation to contain seven specific items in order to place the property owner in a position to defend against the appropriation. One such item is a statement of the purpose of the appropriation. R.C. 163.05(C).

In its complaint for appropriation, appellee stated it "seeks to appropriate the easement for the purpose of erecting an electric transmission line to serve a public facility owned by the [appellee]." Attached to the complaint was a copy of Ordinance No. 90–92 which provided that the purpose of the appropriation was for "the public purpose of constructing an electric power line to serve a sewage disposal lift station owned by the [appellee] * * *." At the hearing on the appropriation, the court heard evidence, over appellant's objection, regarding the environmental concerns which prompted the construction of the lift station. In this assignment of error, appellant claims the court erred by considering such testimony as it related to appellee's stated purpose.

While it is true that R.C. 163.05(C) requires the complaint to state the uses to which the property taken is to be put, it does not indicate that a detailed

statement is required. See *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. Wehmeier* (1929), 33 Ohio App. 475, 481, 170 N.E. 27, 29. The law does not require the appropriating party to express its policy decisions or background reasons motivating it to request the appropriation.

In the present case we find that appellant was afforded sufficient notice to defend against the appropriation. This is illustrated by the testimony and evidence presented to the court by appellant. For instance, Philip Robertson testified on behalf of appellant that it needed the easement to service its electric lines and that alternative routes existed on which appellee could erect its power lines.

██ While it is evident from the trial court's journal entry granting the appropriation that the court erroneously considered the environmental concerns as part of its basis for allowing the appropriation, such consideration was harmless error.

Civ.R. 61 provides the definition for harmless error and reads:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

In view of our finding under appellant's First Assignment of Error, *supra*, that the appropriation by appellee was permissible under the authority of R.C. 719.01 and 719.02, we conclude that the trial court's consideration of the environmental concerns, which served as the impetus for the appropriation, was harmless error.

Appellant's Fourth Assignment of Error is overruled.

Having found no error prejudicial to the appellant herein, in any of the particulars assigned and argued, the judgment of the trial court is affirmed.

*Judgment affirmed.*

HADLEY, P.J., and SHAW, J., concur.