OPINION
On March 2, 1999, the city of Worthington, Ohio ("Worthington") filed a complaint in the Franklin County Court of Common Pleas against the city of Columbus, Ohio ("Columbus"). The complaint arose out of Worthington's attempt to acquire land owned by Columbus and located in Worthington. Worthington wanted the land in order to expand Walnut Grove Cemetery, which is owned by Worthington.
By way of brief background, in 1968 Columbus purchased approximately thirty-eight acres of land on the eastern side of the Olentangy River. This land was and is located in Worthington. Columbus has maintained the land as a park, known as Rush Run Park, since then. Worthington sought to purchase approximately five acres of such land in order to expand its cemetery. Columbus declined to sell the land to Worthington. As part of the present suit, Worthington has sought a declaration that it is entitled to acquire the property by eminent domain for the purpose of expanding its cemetery.
On June 25, 1999, Worthington filed a petition in the Franklin County Court of Common Pleas for appropriation of Columbus's real property — the same property that is the subject of the March 2, 1999 declaratory judgment action. On August 12, 1999, the cases were consolidated. On July 31, 2000, Worthington filed an amended petition for appropriation, adding as parties the owners of real property located within two hundred yards of the proposed cemetery expansion and slightly decreasing the amount of the proposed taking.
Worthington and Columbus filed motions for summary judgment on various issues, including the issue of whether Worthington had the authority to appropriate property owned by another municipal corporation where such property is already being put to a public use. Twelve park authorities from around the state of Ohio filed an amicus brief in support of Columbus's motion for summary judgment.
On August 30, 2001, the trial court rendered a decision granting Columbus's motion for summary judgment. The trial court concluded that under the prior public use doctrine, Worthington had no express or implied authority to appropriate Columbus's land which was being put to a public use. On September 25, 2001, a judgment entry was journalized, granting summary judgment to Columbus and dismissing Worthington's complaint and petition.
Worthington (hereinafter "appellant") has appealed to this court, assigning the following as error:
 The trial court erred by granting Columbus's Motion for Summary Judgment.
Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370, citing Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, paragraph three of the syllabus. Our review of the appropriateness of summary judgment is de novo. See Andersen v. Highland House Co. (2001), 93 Ohio St.3d 547,548.
In the case at bar, there are no factual disputes before us. Rather, the issues center on a question of law, specifically, whether or not appellant may appropriate land located within its corporate boundaries but owned by another municipal corporation, and where such land is being put to a public use. Appellant asserts that it has the authority under the Ohio Constitution to appropriate land located within its corporate limits. Appellant contends that such authority stems from its powers of home rule as set forth in Section 3, Article XVIII of the Ohio Constitution and that such constitutional authority is superior to statutes which authorize Columbus (hereinafter "appellee") to own property outside its corporate limits.
Both parties cite the case of Blue Ash v. Cincinnati (1962),173 Ohio St. 345 in support of their arguments. In Blue Ash, the city of Cincinnati desired to appropriate a public street located in Blue Ash, a municipal corporation, for use as a runway for an airport. Cincinnati argued that under the Ohio Constitution, it had the right to appropriate the property. The constitutional provision cited by Cincinnati was Section 4, Article XVIII, which states:
 Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants * * *. [Emphasis added.]
The Supreme Court stated that Cincinnati's airport was a public utility and that Section 4, Article XVIII gave general powers to Cincinnati to acquire by eminent domain property within or without its corporate limits for the construction of a public utility. Blue Ash at 348. However, the Supreme Court stated that the framers of the Constitution were not thinking in terms of the appropriation of a city hall or of an established public cemetery. Id. at 349-350. After addressing Cincinnati's constitutional power of eminent domain, the Supreme Court went on to address Blue Ash's competing claim under the home rule provision in Section 3, Article XVIII to keep its street from appropriation by a neighboring city. Id. at 350. Section 3, Article XVIII states:
 Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.
The Supreme Court stated that the Constitution and statutes give municipal corporations the power to regulate and control streets. Blue Ash at 350. Streets, however, are not public utilities; they are public and governmental institutions maintained for the free use of all citizens of the state. Id. In maintaining streets, the municipality is engaging in a governmental function as distinguished from a proprietary function. Id. In determining who should prevail in the case before it, the Supreme Court set forth the following general rule:
 [W]hen a condemnor, to which the power of eminent domain is given by law, seeks to exercise its power with respect to property already devoted to public use, its action may be enjoined if the proposed use will either destroy the existing use or interfere with it to such an extent as is tantamount to destruction, unless the law has authorized the acquisition either expressely [sic] or by necessary implication.
Id. at 351.
The Supreme Court determined that there was no express or implied authorization for the taking of a municipal corporation's street, which is devoted to public use, by another municipal corporation acting in its proprietary capacity and for public utility purposes. Id. at 351-352. Further, the Supreme Court indicated that the use of the property for airport purposes would entirely destroy its use for street purposes. Id. at 351.
Appellant contends that Blue Ash is not on point because such case involved different facts, specifically, that in Blue Ash one city wanted to appropriate land within another city's boundaries, and such land was a public street. In the case at bar, appellant desires to appropriate land that is located within its own corporate boundaries. Appellant asserts that Blue Ash only precludes a municipality from appropriating property located in another municipality and that is already dedicated to a public use.
Conversely, appellee contends that the general principles set forth in Blue Ash do apply to the facts herein and preclude appellant from appropriating the subject property, as such property is already committed to a public use. Appellant argues that the general principles set forth in the body of the Blue Ash decision are mere dicta and points to the second paragraph of the syllabus of Blue Ash, which states:
 Where a municipal corporation to which a general power of eminent domain is given by law seeks to exercise its power with respect to property in another municipal corporation already devoted to public use, its action may be enjoined if the proposed use will either destroy the existing use or interfere with it to such an extent as is tantamount to destruction, unless power so to do is expressly authorized or arises by necessary implication. [Emphasis added.]
Under the language emphasized above, appellant argues, therefore, that the principle set forth in the syllabus is not applicable in the present suit because appellant is not seeking to exercise its eminent domain power with respect to property located in another municipal corporation; rather, it seeks to exercise its eminent domain power over property located within its own corporate limits.
Appellant asserts that its authority to appropriate the land in question is derived from the home rule provision in Section 3, ArticleXVIII of the Ohio Constitution. In essence, appellant asserts that under the authority expressed in such provision, it has the absolute power to appropriate land that is located within its own corporate limits, regardless of the fact that the land is owned by another municipal corporation and is being put to public use. We disagree with appellant's assertion in this regard.
Appellant is correct that the second paragraph of the syllabus of Blue Ash specifically addresses the situation presented in that case — where a municipal corporation sought to exercise its eminent domain powers with respect to property located in another municipal corporation. However, the fact that the syllabus was limited to the specific facts of that case does not take away from the general and long-standing prior public use doctrine set forth in the body of the decision and upon which the syllabus law was based. That principle, set forth on page 351 of Blue Ash and quoted above, does not limit its application to proposed takings of property located outside the condemnor's corporate limits.
Appellant argues that the general rule of prior public use cannot be taken out of its historical context. Appellant asserts that the rule originated in cases decided before the adoption of the home rule amendments to the Ohio Constitution in 1912. Appellant contends that once the powers of local self-government were delegated by the people to municipalities, all powers of local government, including eminent domain, were vested solely in municipalities, and municipalities had complete police power in all such matters. In essence, appellant is asserting that its power of eminent domain, when exercised with regard to property located within its boundaries, is absolute.
Appellant has pointed to no authority which states that by virtue of the home rule amendments of 1912, municipalities' power of eminent domain is somehow greater than or broader than the eminent domain power of, for example, the state of Ohio or of any other sovereign of government. The general power of eminent domain granted directly to municipalities through the 1912 amendment(s) is subject to the same general principles applicable to any sovereign's exercise of eminent domain. Such general principles include the prior public use doctrine as set forth in the body of the Blue Ash decision.
We do note that the essence of the prior public use doctrine is part of syllabus law in Ohio. In Northwood v. Wood Cty. Regional Water Sewer Dist. (1999), 86 Ohio St.3d 92, syllabus, the Supreme Court held:
 A taking may be enjoined if it will result in the destruction of an existing public use or the destruction, including economic destruction, of an existing pubic utility operated by a municipality or political subdivision.
The above law does not limit its application depending on the location of the property that has an existing public use. Indeed, the Northwood case supports appellee's assertion that the prior public use doctrine precludes appellant from appropriating property that is being put to a public use, regardless of the fact that the property is located within appellant's borders.
In Northwood, the city of Northwood desired to appropriate property owned by a regional water and sewer district, a political subdivision, and located within the city of Northwood. Id. at 92. The issue in Northwood was whether a municipality may exercise eminent domain over the public utility facilities owned by a water and sewer district. Id. at 93. The Supreme Court answered this in the affirmative, provided the water and sewer district was not thereby destroyed. Id. In so ruling, the Supreme Court noted that there is no question a municipal corporation may appropriate the property of another municipal corporation. Id. at 94. However, the Supreme Court stated that, as set forth in Blue Ash, the question remains as to whether the appropriation will destroy the existing public use or interfere with it to such an extent as is tantamount to destruction. Id.
The facts in Northwood are more similar to the facts in the case at bar than those in Blue Ash. In Northwood, as in the case at bar, the municipality sought to appropriate property located within its own boundaries yet owned by another political subdivision.[1] Again, the issue came down to whether or not the taking would destroy an existing public use. Under the syllabus in Northwood, a taking that would result in the destruction, including economic destruction, of an existing public use or public utility operated by a municipality or political subdivision may be enjoined. We have such a situation in the case at bar.
Appellant seeks to appropriate certain property located within its corporate limits and owned by another municipality. The land is being put to a public use. Appellant intends to use the land to expand its cemetery, a use that will destroy the public use to which the land is currently being put. Under the prior public use principles set forth in Blue Ash and Northwood, appellant's proposed taking may be enjoined if such taking would result in the destruction of the existing public use, unless the power to do so is expressly authorized or arises by necessary implication.
Contrary to appellant's assertions, there is no express authority to appropriate the property at issue for the purpose of expanding its cemetery. In support of its argument, appellant cites to Britt v. Columbus (1974), 38 Ohio St.2d 1. In Britt, the Supreme Court stated that the power of eminent domain is a power of local self-government under Section 3, Article XVIII of the Ohio Constitution. Id. at 6. Appellant argues, therefore, that it has the express and absolute power to appropriate property located within its own corporate limits. However, the fact that the power of eminent domain is a power of local self-government under Section 3, Article XVIII of the Ohio Constitution does not thereby mean that appellant has been granted the express and absolute authority to appropriate any property within its corporate limits, let alone property that is being put to a public use.
The power of eminent domain is not absolute. It follows then that while a municipality is granted general eminent domain power by virtue of Section 3, Article XVIII, such power is not absolute. Britt did not address the issue of prior public use. In addition and as already indicated above, the syllabus in Northwood contains a restriction on the exercise of the power of eminent domain and does not limit the application of such restriction according to where the property is located. Therefore, appellant does not by virtue of Section 3, Article XVIII have express authority to exercise its eminent domain powers under the facts presented in the case at bar. Further, the trial court put it aptly when it stated that the express authority must not be merely the power to appropriate property, but there must be granted the express authority to appropriate land that is already being put to public use. There simply is no express authority granting appellant the power to appropriate land that is already being put to a pubic use. Put another way, appellant has pointed to no authority which expressly exempts it from the prior public use doctrine.
In addition, we find the power of appellant to exercise eminent domain over the subject property does not arise by necessary implication. In this regard, implication must arise only from the language used in Section 3, Article XVIII. See Blue Ash, supra at 352. The language used in Section 3, Article XVIII does not, by necessary implication, confer a right upon appellant to appropriate the subject property . As indicated above, Section 3, Article XVIII grants municipalities all powers of local self-government that are not in conflict with general laws. Certainly, such a grant of general powers cannot be said to grant by necessary implication the power to do what appellant proposes.
We cannot find that the framers of Section 3, Article XVIII and the people, by their adoption of such amendment, intended to leave to implication an absolute power of eminent domain with regard to property within the condemnor's corporate limits, even if such property is owned by another municipal corporation and is being put to a public use. This is especially true in the case at bar, where the public use is a park, which involves a governmental function, as opposed to appellant's proposed use, a cemetery expansion, which involves a proprietary function. There is simply no language in Section 3, Article XVIII of the Ohio Constitution which would, by necessary implication, grant the authority to appellant to appropriate the subject property and thereby destroy the existing public use to which the property is currently being put.
Municipal corporations, by virtue of the authority granted in the 1912 home rule amendments to the Ohio Constitution, as well as through statutory provisions, have the power to own property, appropriate property and put property to various uses. Such authority includes the power to own property and/or appropriate property that is located outside of a municipality's corporate limits. As seen from the case before us, as well as from the cases discussed above, situations do arise where municipalities may assert competing interests in land, property and/or public utilities. To the extent a municipality would argue that, in general, the home rule provision in Section 3, Article XVIII gives it superior eminent domain power with regard to property located within its own corporate boundaries, we would not disagree. However, and as noted above, the power of eminent domain is not absolute.
The prior public use doctrine is a narrow limitation on a municipality's home rule-eminent domain power. Indeed, the prior public use doctrine only limits a municipality's eminent domain power if the subject property is already devoted to a public use and the proposed use will destroy the existing use and there is no express or implied law authorizing the acquisition. The case law in Ohio, including Blue Ash and Northwood, makes it clear to this court that the prior public use doctrine is the prevailing standard upon which to base our decision. Under this prevailing standard, appellant's claims must fail.
In conclusion, we find that appellant's proposed appropriation of the land at issue, property that is devoted to a public use, may be enjoined because it will destroy the existing public use, and there is no law authorizing the acquisition either expressly or by necessary implication. Therefore, summary judgment in favor of appellee on both appellant's complaint for declaratory judgment and petition for appropriation was appropriate. Accordingly, appellant's sole assignment of error is overruled.
In summary, appellant's sole assignment of error is overruled. The judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
LAZARUS and DESHLER, JJ., concur.
[1] The Supreme Court could not discern a reason to treat differently the property of a political subdivision other than a municipality (i.e., the water and sewer district). Id.