These two cases involve the same proposed improvement, and will be considered together. The litigation grows out of the following facts:
Stow township in Summit county is located about seven miles northeast of the center of the city of Akron, and extends easterly to the Portage county line. The board of county commissioners of Summit county, under favor of Section 6602-1et seq., General Code, created two sewer districts in said township, and later, for the purpose of supplying water to such sewer districts, under favor of Section 6602-17 et seq., General Code, had plans prepared for the construction of a water main to intersect the Akron city water main, which extends from the Akron city dam in the Cuyahoga river, two miles above the city of Kent in Portage county, southerly to the city of Akron, a distance of about eleven miles, which point of intersection is about a mile east of the Summit-Portage county line, in Portage county, and in the highway extending from Akron and Cuyhago Falls through Stow township to the city of Kent in Portage county.
The proposed water main is designed to be sixteen inches in diameter, and is to be constructed within the limits of such county highway a distance of three and one-half miles to the center of Stow township. *Page 364 
For the most part the territory on each side of the highway consists of farm lands, and the owners of the lands, by their deeds, own to the center of the highway.
The county commissioners propose to have the water transported from the Akron city main under a contract with the city of Akron, the water to be taken from the Cuyahoga river at the dam by the city of Akron and transferred from its main to the proposed Stow township main.
For one hundred years prior to 1914, the year the city of Akron constructed the dam, certain persons owned mill sites on the Cuyahoga river and used the waters of the river for power purposes. Prior to constructing the dam the city of Akron acquired from such mill site owners the right to divert the water of the Cuyahoga river, by deeds which contain the following provisions:
"Whereas, the city of Akron * * * for the purpose of supplying the inhabitants of said City with water for the extinguishment of fires and for domestic and all other lawful purposes, and by virtue and in exercise of the power and authority contained in Vol. 102, page 175, of the Acts of the Legislature of said State of Ohio, for the year 1911, * * * does intend * * * to take, and permanently appropriate all the waters of said Cuyahoga River at and above a line heretofore fixed as the axis of a proposed dam to be built by said City * * *; and also all the waters of all the tributaries of said Cuyahoga River, above said line of proposed taking, and all the waters which may flow into and from said Cuyahoga River and the tributaries thereof above said line for the purpose of *Page 365 
diverting the same for the purposes aforesaid and no other at, near or above said line and not elsewhere; and
"Whereas, said Company has determined to forthwith settle and compromise all claims for damages of whatever character which might accrue to it by reason of said proposed taking; * * *
"Now, Therefore, Know All Men by These Presents: That said company, being the owner of the premises hereinbefore described and the water rights and easements appurtenant thereto, * * * does hereby remise, release and forever quitclaim unto said City, all the water rights, connected with the property hereinbefore described and all the water rights in said river connected with or appurtenant to any other lots or lands now owned by said Company, which are, or may be, taken, interfered with or destroyed by the said proposed taking, diversion, and permanent appropriation by said City of the waters of the Cuyahoga River for City of Akron Water Works purposes, and no other purposes, under and in accordance with Vol. 102, Page 175, Ohio laws, and all other power and authority thereto enabling and in the manner hereinbefore set forth. * * *
"Expressly reserving, however, to said * * * Company, and to its successor, or successors and assigns, the right to use and enjoy forever, as heretofore, all the waters of the Cuyahoga River not appropriated or made use of by said City of Akron for its water purposes, as hereinbefore described * * *."
The estimated cost of the water main is $153,000, of which amount $8,000 is to be paid by Summit *Page 366 
county. The only source of a water supply available to the county commissioners or the inhabitants of the sewer districts for a water system is from the water main of the city of Akron.
The various owners of the mill sites along the Cuyahoga river below the dam, who executed deeds to the city of Akron, have formally protested the diversion of water from the Cuyahoga river for purposes other than supplying water to and for the city of Akron.
In the first case, the plaintiff in error seeks to raise two questions:
First, can a taxpayer, as such, enjoin the execution of a contract by the board of county commissioners to install a water main in the highway outside of any municipality without the consent and against the protest of abutting owners, where such owners own to the center of the highway?
Second, can a taxpayer enjoin the board of county commissioners from entering into a contract with the city of Akron whereunder said city shall furnish water from the Cuyahoga river to supply a township sewer district created by said board against the protests of the riparian millowners, where the only right which the city has in said river is that acquired from said riparian owners to take therefrom water sufficient for its own inhabitants?
In the second case, plaintiff seeks to have determined the following question:
Can the owner of land outside of a municipality, who owns to the center of a highway, enjoin the board of county commissioners from laying a water supply main in that portion of the highway owned by him? *Page 367 
In the consideration of these two cases, we do not consider it necessary to determine the first question raised in case No. 22369, since the rights of the county commissioners and the abutting property owners with respect to the installation of a water main in the highway must be determined in case No. 22370, at the instance of a party who clearly has the right to maintain the action.
The pleadings and the record present the situation of a board of county commissioners undertaking to expend a considerable sum of public money in the construction of a water main without first ascertaining that a water supply can be secured at the source of the main, or that it, or the public, or any portion thereof, will be able to use the water main after it has been constructed.
The record presents a debatable question, whether the city of Akron has acquired from the riparian owners along the Cuyahoga river below the dam a right to take water from such river above their mill sites for the purpose of sale to districts outside the city of Akron.
We do not enter into a discussion of the respective rights of the riparian owners and the city of Akron, since they are not parties to these actions. We only consider that phase of the case to the extent of determining that there is a sufficiently debatable question as to their respective rights to require that such question be determined in advance of the expenditure by public officials of public money; that under the facts appearing in these cases the expenditure of public money by the county commissioners in the construction of the water main in advance of a settlement of the question of a water supply, either *Page 368 
by additional contracts between the city of Akron. and such riparian owners, or between the county commissioners and such riparian owners, or by judicial determination of the rights of the several parties under existing contracts, where all the interested parties are before the court, is an unlawful expenditure of public money.
The same reasoning that requires an outlet, or a certainty that an outlet can be obtained, as a condition precedent to the construction of a drainage ditch, requires a source of water supply, or a certainty that a water supply can be obtained, as a condition precedent to the construction of a water main; a water main without a source of water supply being just as useless as a drainage ditch without an outlet.
In the consideration of the question raised in case No. 22370, we are not unmindful of the fact that the weight of authority, both text and judicial decision, makes a distinction between the character of the title of the municipality to its public streets and the character of the title of the state to public highways outside municipalities; that theoretically a municipality owns the fee to its streets, in trust for the use of the public, and the abutting property owners outside municipalities own the fee to the highway, subject to the easement of the state or the public to use the highway for the purpose of travel. The distinction so made is an artificial one and not based upon sound logic. However, for the purposes of this case, we will concede the distinction and consider the rights of the public in the highway outside municipalities to be limited to use for the purposes of travel and transportation and the right of the state *Page 369 
to keep it in condition to serve that purpose. Under such theory, unquestionably each member of the public is entitled to haul or carry as much water over the public highway as he may choose. The court will take judicial notice of the fact that at the present time, owing to an unusually severe drought, not only are many families being supplied with water by wagons operated over the highways, but whole communities are being so supplied. While the use of the highways at this time for such purpose is greater than usual, nevertheless the right has existed and has been exercised at all times.
The board of county commissioners, having been authorized by the Legislature to create sewer districts, and to supply water to such districts, and having by appropriate legislation created sewer districts and assumed the burden of supplying water to such districts, has the same use of the public highways in the performance of the obligation thus assumed that each individual of the group has in supplying himself with water. Why may it not, then, in the discharge of the burden so assumed, use the highway in the manner that will not only best promote the health and welfare of the group, but also be both economical to the public served and least burdensome to the highway?
The use of the highway by the county commissioners for the purpose of transporting water through a water main to a distant sewer district being for the benefit of the abutting property owners and such sewer district alike, and wholly for a public purpose, is distinguishable from the cases involving the installation of a permanent construction in the highway by privately owned public utility *Page 370 
corporations, which, while they do and must serve the public, are owned and operated for private gain.
The judgment of the Court of Appeals in case No. 22369 is reversed and in case No. 22370 is affirmed.
Judgment reversed in case No. 22369.
 Judgment affirmed in case No. 22370.
MATTHIAS, ALLEN and KINKADE, JJ., concur.
DAY, J., concurs in proposition 1 of the syllabus and in the judgment in case No. 22369.
MARSHALL, C.J., concurs in proposition 2 of the syllabus and in the judgments.
JONES, J., affirms the Court of Appeals in both cases.