OHIO EDISON COMPANY, APPELLEE, *v.* CARROLL ET AL., APPELLANTS.

(No. 1227—Decided February 22, 1984.)

*Mr. Bruce D. Parish,* for appellee.
*Mr. Harry Van Horsten* and *Mr. Carl E. Meador,* for appellants.

MAHONEY, J. Defendants, George and Ruth Carroll, appeal a trial court order granting the Ohio Edison Company an easement on defendants' property and awarding them $2,226 in compensation for said easement. We affirm.

The plaintiff-appellee, Ohio Edison Company, is a public utility and an electric company providing electric current to its customers in Medina County and elsewhere in the state of Ohio. The Carrolls own property at 2204 Marks Road, Valley City, Medina County, Ohio. On June 21, 1982, the plaintiff filed a lawsuit in the Medina County Court of Common Pleas seeking to appropriate an easement thirty feet wide, parallel with and adjacent to Marks Road, for the installation of lines for the transmission and distribution of electric current. All persons including the Carrolls having an interest in the real estate subject to the proposed easement were made parties to the action.

The court held a hearing pursuant to R.C. 163.09 and determined that Ohio Edison had the right to make the appropriation and that it was necessary. A jury was impaneled and assessed compensation for the easement and damage to the residue, awarding the Carrolls $2,226.

Assignment of Error I

"The lower court erred by failing to deny Ohio Edison's appropriation petition on the ground that the intended uses stated therein were beyond the statutory authority granted under § 4933.15 of the Ohio Revised Code."

R.C. 4933.15 provides in part:

"Any company organized for manufacturing, generating, selling, supplying, or transmitting electricity, for public and private use, * * * may appropriate so much of such land, or any right or interest therein, including any trees, edifices, or buildings thereon, as is deemed necessary for the erection, operation, or maintenance of an electric plant, including its generating stations, substations, switching stations, transmission and distribution lines, poles, towers, piers, conduits, cables, wires, and other necessary structures and appliances, or for rights of way over such land and adjacent lands for the purpose of access to any part of such land. The right of appropriation shall be exercised in the same manner provided by sections 163.01 to 163.22, inclusive, of the Revised Code."

A senior engineer employed by Ohio Edison testified that Edison also plans to operate a telephone line on the poles solely to enable one electrical substation to talk to another. Nothing in the record indicates that the company plans to operate telephone or telegraph lines, as such, for any other reason. Wires that allow communication between substations are necessary for the operation and maintenance of an electric plant and, thus, are permitted by the statute. See *Ohio Power Co. v. Deist* (1951), 154 Ohio St. 473 [43 O.O. 420]; and *Ohio*

*Power Co.* v. *Diller* (1969), 18 Ohio App. 2d 167 [47 O.O.2d 292].

### Assignment of Error II

"The provisions of Ohio Revised Code § 163.09(B) are unconstitutional in that they place the burden of proving the unnecessariness of the appropriation upon the property owner."

It is well-settled law that the legislature has authority to decide what shall constitute prima facie evidence and to prescribe the rules of evidence which shall be observed by judicial tribunals. See *Pennsylvania Co.* v. *McCann* (1896), 54 Ohio St. 10. Thus, R.C. 163.09 is a constitutional enactment. *Bd. of Edn.* v. *Holding Corp. of Ohio* (1971), 29 Ohio App. 2d 114 [58 O.O.2d 165]; and *Ohio Power Co.* v. *Diller, supra.*

### Assignment of Error III

"The trial court erred in failing to find that an owner of land abutting upon a county highway, whose title extends to the center of the road is entitled to compensation for an easement of that property.

"A. Ohio Edison's petition used an inadequate and insufficient description for appropriation of an easement since it failed to include the property over the public highway which is owned to the centerline by the appellants.

"B. The trial court erred in failing to charge the jury that the appellants' title extended to the center of the road and that they are entitled to compensation for an easement to erect and maintain electric poles and lines within the limits of a county highway."

R.C. 163.05(A) requires:

"An agency which has met the requirements of section 163.04 of the Revised Code, may commence proceedings in a proper court by filing a petition for appropriation of each parcel or contiguous parcels in a single common ownership, or interest or right therein. The petition of a private agency shall be verified as in a civil action and all petitions shall contain:

"(A) A description of each parcel of land or interest or right therein sought to be appropriated, such as will permit ready identification of the land involved;"

In the instant case, the petition describes the land to be appropriated as:

"* * * premises owned by George Thomas Carroll Jr. and Ruth Neura Carroll and being further described as follows:

"Situated in the Township of Liverpool, County of Medina, and State of Ohio, being a part of Lot 3, Section 16.

"The right of way above referred to is described as follows:

"A strip of land 30 feet wide parallel with and adjoining the westerly limits of Marks Road, C.H. 22, (60'). * * *"

The petition further describes the centerline of the easement in metes and bounds from the northeasterly corner of appellants' property on the centerline of Marks Road to the southeasterly corner of appellants' property also located on Marks Road. The petition also states that the easement shall be wide enough to permit access to the poles and wires for maintenance purposes. This description permits "ready identification of the land involved."

The Carrolls own the property to the centerline of Marks Road subject to a roadway easement thirty feet wide adjacent and parallel to the centerline of Marks Road in favor of Medina County for public highway and road purposes. The paved surface of Marks Road occupies eleven feet of this road right-of-way. The remaining nineteen feet comprises the berm, a drainage ditch and grass. The petition filed in the instant case sought to appropriate an easement over thirty additional feet of appellants' property adjacent and parallel to the roadway easement. Ohio Edision proposes to erect wooden poles and electrical lines two feet from the edge of the

roadway easement and within the thirty foot additional easement Edison obtained from appellants. Edison desires to use the road right-of-way for the purpose of maintaining the proposed poles and lines.

Appellants contend that Edison's use of the roadway easement imposes an additional burden on the use of their roadway land for which they should be compensated. To support this contention, they cite *Ohio Bell Tel. Co.* v. *The Watson Co.* (1925), 112 Ohio St. 385, paragraphs two and three of the syllabus, where the Supreme Court held:

"2. An owner of land abutting upon a country highway, whose title extends to the center of the road along the side of which are located shade trees, has a property right in such trees, and the same may not be interfered with, unless by consent of such owner or first making compensation according to law. (*Daily* v. *State*, 51 Ohio St., 348, 37 N.E., 710, 24 L. R. A., 724, 46 Am St. Rep., 578, followed and approved.)

"3. The erection and maintenance of telephone poles and wires within the limits of a country highway is an additional burden upon the easement and an invasion of the property rights of the abutting owner, for which he is entitled to compensation."

This decision was based on the fact that, in rural areas, the abutting property owners own the fee to the highway land subject to the public easement to use the highway for purposes of travel. Conversely, urban property owners possess no real property interest in municipal streets. Rather, the municipality owns the fee to its streets in trust for the use of the public. The rural-urban distinction has in the past been the grounds for holding that a particular use creates an additional burden on the rural highway easement but that the same or similar use does not impose an additional servitude where the street is located within a municipality. See 38

Ohio Jurisprudence 3d (1982) 198, Eminent Domain, Section 136.

Thus, in *Hofius* v. *Carnegie-Illinois Steel Corp.* (1946), 146 Ohio St. 574 [33 O.O. 67], the court determined that the construction of a water main along a rural highway was an additional burden upon the fee of the abutting owner, while in *Friedman Transfer & Constr. Co.* v. *Youngstown* (1964), 176 Ohio St. 209, 213 [27 O.O.2d 91], the court said:

"It is apparent, even under the *Hofius case,* that an easement granted for highway purposes within a city would bear with it the right by the grantee to install water pipes without requiring additional compensation. There is no reason why that rule should not apply here, as the easement in this case, although granted originally to the state Department of Highways, is concerned with a highway within a city. * * *"

In *Ziegler* v. *Ohio Water Serv. Co.* (1969), 18 Ohio St. 2d 101, 105 [47 O.O.2d 244], the Supreme Court abolished the rural-urban distinction, saying:

"We are unable to conceive of any difference in the burden on the property, whether the bridge was built outside or within the city. Actually, in *Friedman* there is no theory of ownership of a fee in trust upon which the municipality distinction can be based, since the easement was that granted the state and the city's rights were derived from that grant.

"We are of the opinion that the better rule does not demand a different standard for determining the existence of an added burden on property, whether it involve a fee in trust conveyed to a municipality or an easement for highway purposes outside a municipality. If such a distinction were to remain a part of our law, where rural land is annexed to a municipal corporation, the municipal corporation would receive a fee in trust in property designated as streets, and the municipality would be

obligated to pay abutting land owners for taking the added property interest comprising the total fee. Indeed, such a result can not be the law. If there were ever a sound reason for such a distinction, time has rendered it inapplicable.

"The question in the instant case is whether the intended use of the land, subject to the easement of the state for a highway, is an added burden on plaintiff's property. * * *"

Admittedly, the *Ziegler* case concerned underground water pipes while the instant case deals with above-ground electrical wires and poles. However, based on the broad language quoted above, we believe that the instant case must be decided not on the rural-urban distinction but rather on the impact of Edison's proposed use of the roadway easement on appellants' rights in said property.

Ohio law has long recognized that an adjoining property owner in either a rural or an urban setting has an easement of ingress and egress, light, air and view in the adjacent street. *Friedman Transfer & Constr. Co.* v. *Youngstown, supra; Smith* v. *Central Power Co.* (1921), 103 Ohio St. 681; and *Sears* v. *Hopley* (1921), 103 Ohio St. 46. Poles and wires for the transmission of electrical current do not interfere with a city dweller's easement in the adjacent street. *Huss* v. *Toledo Railways & Light Co.* (1915), 25 Ohio C.C. (N.S.) 44; and *Smith* v. *Central Power Co.* (1920), 23 Ohio N.P. (N.S.) 55, affirmed (1921), 103 Ohio St. 681. Since *Ziegler* has abolished the urban-rural distinction, we hold that appellee's use of the county roadway to maintain its poles and wires is not an additional burden on appellants' property.

We overrule all of appellants' assignments of error. The judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., concurs.

HOFSTETTER, J., dissents.

HOFSTETTER, J., retired, of the Eleventh Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.

HOFSTETTER, J., dissenting. I respectfully dissent from the majority opinion for the following reasons.

*Ohio Bell Tel. Co.* v. *The Watson Co.* (1925), 112 Ohio St. 385, stated the following in its syllabus:

"1. In this state the fee to the country highway is in the abutting owner, and the public has only the right of improvement thereof and uninterrupted travel thereover.

"2. An owner of land abutting upon a country highway, whose title extends to the center of the road along the side of which are located shade trees, has a property right in such trees, and the same may not be interfered with, unless by consent of such owner or first making compensation according to law. (*Daily* v. *State,* 51 Ohio St., 348, 37 N.E., 710, 24 L.R.A., 724, 46 Am. St. Rep., 578, followed and approved.)

"3. The erection and maintenance of telephone poles and wires within the limits of a country highway is an additional burden upon the easement and an invasion of the property rights of the abutting owner, for which he is entitled to compensation.

"4. Where along a rural highway a telephone company has erected poles, done necessary cutting and trimming of a shade tree to permit the placing of telephone cables on said poles, such construction, however, not interfering with the access, light and air of the adjoining owner, but being without the consent and against the protest of such owner, an injunction will be granted at his instance restraining the further construction of such telephone line and requiring the removal of the poles and cables already in place, unless compensation

shall be made to such owner or his consent obtained."

The above syllabus, to the extent it concerns itself with the erection and maintenance of poles and wires not for highway purposes in a county highway right-of-way, has never been repudiated.

On the other hand, the Supreme Court has vacillated significantly as it concerns whether water mains constitute an additional burden upon the fee of abutting owners of real property.

In 1931, the Supreme Court in *State, ex rel. Graham, v. Bd. of Cty. Commrs.* (1931), 123 Ohio St. 362, held that the cost of a water main within a highway easement outside a municipality does not constitute an additional burden upon the fee of the abutting owners.

Fifteen years later, a Supreme Court consisting of seven different justices said in *Hofius* v. *Carnegie-Illinois Steel Corp.* (1946), 146 Ohio St. 574 [33 O.O. 167], that the construction and maintenance underground of a water pipeline, for public purposes, in real property outside a municipal corporation which is subject to an easement for highway purposes is an added burden on such property for which compensation should be awarded.

In 1964, the Supreme Court in *Friedman Transfer & Constr. Co.* v. *Youngstown* (1964), 176 Ohio St. 209 [27 O.O.2d 91], with another full change of justices, but with two dissenting, again said, but as it related only to streets within a municipality, that an easement granted to a city for street purposes includes the right of a city to install, without compensation, water pipes which impose no additional burden on the abutting property, applies to an easement granted the State Highway Department and its assigns for the purpose of constructing a bridge upon a highway within the city. It will be noted that the *Friedman* decision at 213 said the following about *Ohio Bell Tel. Co.*, *supra:*

"* * * In that case, the highway was being despoiled by the cutting and trimming of shade trees by a private corporation operating a telephone company. The slashing of beautiful shade trees along a rural highway is an act quite remote from the laying of an underground water main and inconsistent with the property owners' interest. *Ohio has always recognized that the abutting-property owner along a rural highway has a property interest in such trees along the highway subject only to the convenience of public travel.*" (Emphasis added.)

The Supreme Court in its syllabus in *Ziegler* v. *Ohio Water Serv. Co.* (1969), 18 Ohio St. 2d 101 [47 O.O.2d 244], then said:

"The construction and maintenance underground of a water pipeline, for public purposes, in real property outside a municipal corporation which is subject to an easement for highway purposes, is not an added burden on such property for which compensation must be awarded. (*Hofius* v. *Carnegie-Illinois Steel Corp.*, 146 Ohio St. 574 [33 O.O. 67], overruled.)"

With the exception of Justices Taft, Zimmerman, and O'Neill, the other justices in *Ziegler* were different persons than in the *Friedman* case.

I comment on the structure of the court because no present member of the Supreme Court served on any of the cases referred to above. Because of the changes in the thinking of the high court in the relatively short period of approximately fifty years on the question of whether water lines in easements for highway purposes in areas outside of municipal corporations constitute additional burden to the property owners affected, and because those differing views have not directly affected either the holding set forth in the syllabus of *Ohio Bell* or the long standing abutting owners' property interest in trees along rural highways as expressed in *Fried-*

*man,* and because our present Supreme Court includes none of the justices involved in the prior water line cases mentioned above, I conclude that *we should not accept Ziegler as precedent for facts that did not exist in Ziegler.*

The majority stated that the Supreme Court abolished the rural-urban distinction in *Ziegler, supra.* I agree that as to the facts before that court consisting of an agreed statement of facts involving only the underground water pipeline at issue according to the appellate citation, *Ziegler* v. *Ohio Water Serv. Co.* (1968), 14 Ohio App. 2d 1 [43 O.O.2d 15], the Supreme Court, in essence, abolished the rural-urban distinction as it involved the installation of water lines in an easement for highway purposes.

With *no facts* before the court in *Ziegler* even remotely involving above the ground installation of poles, and lines and/or other matters affecting sight, distances, views, or hazards, it is impossible for me to accept the statement in the Supreme Court opinion in *Ziegler,* as quoted by the majority, as being applicable to above the ground installation, when, if the reasoning or statement is applied to above the ground usage of a highway easement, it can only be considered as *dicta. Dicta,* even of the Supreme Court, especially when written based on facts only involving an underground pipeline in a highway easement, should not serve as a basis for this court to ignore the *stare decisis* applicable to poles and lines and trees as expressed by the syllabus in *Ohio Bell Tel. Co.,* and referred to so cogently in *Friedman.*

As noted in the Supreme Court Rules for the Reporting of Opinions at Rule 1(B): "The syllabus of a Supreme Court opinion states the controlling point or points of law decided in and necessarily arising from the facts of the specific case before the Court for adjudication."

Although I acknowledge the possible influence the appellate court's earlier decision in *Krause* v. *State* (1972), 31 Ohio St. 2d 132 [60 O.O.2d 100], may have ultimately had as it concerns another matter, the doctrine of governmental immunity, the concurring opinion of Justice Corrigan in *Krause, supra,* at 148, clearly enunciated the limitations of the appellate court as follows:

"It is axiomatic that: 'Decisions of a court of last resort are to be regarded as law and should be followed by inferior courts, whatever the view of the latter may be as to their correctness, until they have been reversed or overruled * * *.' 21 Corpus Juris Secundum 343, Courts, Section 197. [Footnote omitted.].

"The foregoing rule has been recognized and followed in numerous cases by our courts. See the cases cited in 14 Ohio Jurisprudence 2d 653, Courts, Section 224. It should have been followed by the Court of Appeals here.

"Instead, the majority of the Court of Appeals chose to ignore the well known precedents established by this court on the question of sovereign immunity and to flout the legal doctrine of *stare decisis et non quieta movere* — to stand by the precedents and not disturb established principles. That majority unsettled the stability of Ohio law on sovereign immunity with the widespread publicity given to their misleading, unwarranted and erroneous opinion and judgment in newspapers, magazines, law journals, legal periodicals, and in other news media."

Based on all of the above, I would hold that assignment of error number three is well-taken. Accordingly, I would reverse the judgment of the trial court and remand for further proceedings.