[Cite as *State v. Brown*, 2013-Ohio-3109.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Sheila G. Farmer, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 12CA63 |
| WILLIAM G. BROWN | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Criminal appeal from the Richland County
Court of Common Pleas, Case No. 2012-
CR-176 D

JUDGMENT:    Affirmed in part; vacated in part; remanded

DATE OF JUDGMENT ENTRY:    July 15, 2013

APPEARANCES:

For Plaintiff-Appellee    For Defendant-Appellant

JAMES J. MAYER, JR.    WILLIAM CRAMER
Prosecuting Attorney    470 Olde Worthington Road, Ste. 210
JOHN NIEFT    Westerville, OH 43082
38 South Park Street
Mansfield, OH 44902

*Gwin, P.J.*

{¶1} Defendant-appellant William G. Brown ("Brown") appeals from the July 2, 2012 Judgment Entry of the Richland County Court of Common Pleas convicting and sentencing him after a jury trial on one count of Failure to Comply with an Order or Signal of a Police Officer, a violation of R.C. 2921.331(B), elevated to a third-degree felony by the allegation that Brown's operation of his motor vehicle caused a substantial risk of serious physical harm to persons or property and one count of Possession of Criminal Tools, a violation of R.C. 2923.24(A), a felony of the fifth degree.

*Facts and Procedural History*

{¶2} Brown was stopped around noon on March 7, 2012, going southbound on I-71. Trooper Murfield and his trainee, Trooper Adkins, had noticed that Brown's truck had a large gap between the tailgate and the bumper, which, from training and experience, indicated that there was a hidden compartment beneath the truck bed. Trooper Murfield checked the truck speed and saw that it was five mph over the limit, so they initiated a traffic stop. The truck pulled over, and Murfield and Adkins approached the truck on the passenger side. Brown was the driver and said that he was returning to his home in Alabama after visiting family in Youngstown.

{¶3} Upon approaching the vehicle, Trooper Murfield detected an odor of raw marijuana coming from the truck cab. Trooper Murfield told Brown to put the keys on the dashboard and exit his vehicle. A canine unit was requested. As Trooper Murfield got to the door of Brown's truck, Brown put the keys back in the ignition and fled down I-71 South. Troopers Murfield and Adkins quickly returned to their cruiser and pursued Brown, relaying this information over the radio. This began a high-speed pursuit. The

trooper's cruiser camera captured the ensuing chase and the video was played for the jury.

{¶4} Brown led law enforcement on a thirty-minute, high-speed chase in and around Bellville, Ohio. Brown drove at speeds of 80 mph through residential areas of Bellville, 60 mph through downtown Bellville, and 90 mph near Clear Fork High School, which was in session. The speed limits for these areas ranged from 55 mph on the outskirts of Bellville to 25 mph in downtown Bellville. By the end of the pursuit Ohio State Highway Patrol, the Richland County Sheriff's Office, Bellville Police Department, Lexington Police Department, and Mansfield Police Department, had joined in attempting to stop Brown.

{¶5} During the pursuit, Sheriff's deputies tried to deploy stop sticks at several locations. Sgt. Zehner of the Richland County Sheriff's Office deployed stop sticks after a bridge where he did not think Brown could avoid the spikes. Brown swerved off the road, down an embankment, and into a field. The deputy thought Brown was going to hit his cruiser, so he fled down the embankment on foot and was almost hit by Brown when he came down the embankment. Trooper Murfield hit these stop sticks, but was able to maneuver his cruiser to attempt to keep Brown off the road and in the field. Brown rammed the front of Trooper Murfield's cruiser as he returned to the road.

{¶6} Trooper Berengo took over as lead when Trooper Murfield's cruiser was incapacitated. Brown's truck struck stop sticks soon after on Possum Run Road. Brown pulled into a Wal-Mart parking lot, drove through parked cars, and in front of the doors as his tires deflated. The pursuing officers circled around Brown to close off exits from the Wal-Mart parking lot. Brown turned into the parking lot of La Quinta Inn. He stopped his

truck in front and ran inside the hotel. Brown was peacefully apprehended inside the hotel.

{¶7} After the arrest and on the scene, Trooper Morrow read Brown his *Miranda* rights and questioned him about the pursuit. Brown said that he had panicked. During the inventory search of the vehicle prior to impound, a Crown Royal bag was found with $45,000 cash in it. Brown said that that money had come from his trucking business. Brown had a valid CDL and the truck was titled to him, but registered to his wife.

{¶8} Following the impound of the truck, it was examined for a hidden compartment at the Ohio State Highway Patrol Post. Trooper Morrow had his drug dog, Hera, walk around the vehicle. Hera alerted on the area between the left rear tire and cab area. Hera also alerted on the money from the Crown Royal bag. The tailgate area looked odd because it was clean while the rest of the paint on the truck was dirty. The troopers pried off the false bottom of the bed, which was hiding a four-inch deep bed beneath it. The false bed had been closed, sealed, and painted underneath the truck bed. Inside the bed were duct tape, a broom handle and bleach. There were also several air fresheners in the cab.

{¶9} The prior owner of the truck testified that he bought the truck at an auction, and fixed the right rear quarter panel and the rear bumper, before selling it to Brown in May 2011. The prior owner denied that the truck had a secret compartment when he got it and denied adding a secret compartment before selling it to Brown.

{¶10} A trooper testified that the broomstick and duct tape were often used to reach into compartments and pull out contraband, and drug couriers often use bleach to try to cover the smell of drugs. However, troopers did not find any contraband.

{¶11} The jury found Brown guilty as charged. The jury specifically found that Brown had caused a substantial risk of serious physical harm to persons or property. Brown was sentenced to maximum consecutive sentences, totaling four years' incarceration and three years' post release control. Brown was also given a 36-month operator's license suspension and ordered to pay restitution for the deductible of the damage to the cruiser he struck.

*Assignments of Error*

{¶12} Brown raises six assignments of error,

{¶13} "I. APPELLANT WAS DEPRIVED OF HIS RIGHTS TO DUE PROCESS AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE OHIO CONSTITUTION, ARTICLE I, SECTION 16, BECAUSE THERE WAS INSUFFICIENT EVIDENCE THAT APPELLANT'S OPERATION OF A MOTOR VEHICLE CAUSED A SUBSTANTIAL RISK OF SERIOUS PHYSICAL HARM.

{¶14} "II. THE JURY'S FINDING THAT APPELLANT'S OPERATION OF THE MOTOR VEHICLE CAUSED A SUBSTANTIAL RISK OF SERIOUS PHYSICAL HARM TO PERSONS OR PROPERTY WAS NOT SUPPORTED BY THE WEIGHT OF EVIDENCE.

{¶15} "III. APPELLANT WAS DENIED HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE

UNITED STATES CONSTITUTION AND THE OHIO CONSTITUTION, ARTICLE I, SECTION 16, WHEN THE TRIAL COURT FAILED TO REPEAT THE JURY INSTRUCTIONS AFTER CLOSING ARGUMENTS IN VIOLATION OF CRIM.R. 30.

{¶16} "IV. APPELLANT'S WAS DEPRIVED OF HIS RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE OHIO CONSTITUTION, ARTICLE I, SECTION 10, WHEN TRIAL COUNSEL FAILED TO OBJECT TO THE TRIAL COURT GIVING THE JURY INSTRUCTIONS PRIOR TO CLOSING ARGUMENTS IN VIOLATION OF CRIM.R. 30.

{¶17} "V. THE TRIAL COURT VIOLATED R.C. 2929.18 BY ORDERING RESTITUTION IN AN UNSPECIFIED AMOUNT.

{¶18} "VI. THE TRIAL COURT VIOLATED DEFENDANT'S STATE AND FEDERAL CONSTITUTIONAL PROTECTIONS AGAINST DOUBLE JEOPARDY AND R.C. 2945.25 BY FAILING TO MERGE DEFENDANT'S CONVICTIONS FOR POSSESSION OF CRIMINAL TOOLS AND FAILURE TO COMPLY."[1]

I & II

{¶19} Because we find the issues raised in Brown's first and second assignments of error are closely related, for ease of discussion we shall address the assignments of error together.

{¶20} In his first assignment of error, Brown argues that there was insufficient evidence that his operation of a motor vehicle caused a substantial risk of physical injury. In his second assignment of error Brown contends that the jury's finding that his

---

[1] By Judgment Entry filed January 16, 2013, we granted Brown's motion for leave to file a supplemental brief to raise this assignment of error.

operation of a motor vehicle caused a substantial risk of physical harm is against the manifest weight of the evidence.

**{¶21}** Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶ 146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶ 68.

**{¶22}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed. 1990) at 1594.

{¶23} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, supra, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶24} R.C. 2921.331(B) provides: "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." The statute further provides,

(5)(a) A violation of division (B) of this section is a felony of the third degree if the jury or judge as trier of fact finds any of the following by proof beyond a reasonable doubt:

(i) The operation of the motor vehicle by the offender was a proximate cause of serious physical harm to persons or property.

(ii) The operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property.

{¶25} "Substantial risk" means a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist. R.C. 2901.01(A)(8).

{¶26} A review of the evidence overwhelmingly shows that Brown created a substantial risk of serious physical harm to other persons and/or property.

{¶27} Evidence showed that while fleeing from law enforcement officers Brown swerved across the double yellow line to pass cars, causing the people he passed and oncoming traffic to swerve out of the way and stop short. Brown ignored red lights and stop signs in downtown Bellville. Brown drove at speeds of 60 to 80 mph on residential streets. Brown drove around 90 mph near Clear Fork High School while it was in session. Brown nearly struck Sgt. Zehner and his cruiser as he avoided stop sticks. Brown struck Trooper Murfield's cruiser as he aggressively regained the road. Finally, Brown sped between parked cars and in front of Wal-Mart before finally being stopped.

{¶28} We find this to be competent, credible evidence to support the jury's finding Brown created a substantial risk of serious physical harm to persons and property, and such finding was not against the manifest weight of the evidence. *Accord*, *State v. Barnett*, 5th Dist. No. 2004AP 03 0019, 2005-Ohio-255, ¶18; *State v. Bash*, 5th Dist. No. 02-CA-00118, 2003-Ohio-4191, ¶22.

{¶29} Brown's first and second assignments of error are overruled.

III.

{¶30} In his third assignment of error, Brown contends that he was prejudiced when the trial court read the jury instructions before closing arguments and did not repeat them after closing arguments.

{¶31} Brown relies upon *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640(1990). In *Comen*, the Supreme Court of Ohio looked to Crim.R. 30(A), which then stated that " * * * the court shall instruct the jury after the arguments are completed." The Court found that the language in the rule was mandatory and that if "preliminary or cautionary instructions include matters of law vital to the rights of a defendant, the trial court is not excused from including or repeating all such instructions after the arguments are completed." Id. at 209, 553 N.E.2d 640. The Court thus held that "[a]fter arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." Id. at 210, 553 N.E.2d 640. In that case, however, the Court found the failure to repeat such instructions to have been harmless.

**{¶32}** Brown did not object. Therefore, for this court to reverse Brown's convictions, we must find that the trial court's procedure regarding its jury instructions was prejudicial. Crim.R. 52(B).

> [A]n appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.

*United States v. Marcus,* 560 U.S. 258, 130 S.Ct. 2159, 2164,176 L.Ed.2d 1012 (Internal quotation marks and citations omitted). The Ohio Supreme Court pertinently addressed when structural error analysis should be used in *State v. Perry,*

> We emphasize that both this court and the United States Supreme Court have cautioned against applying a structural-error analysis where, as here, the case would be otherwise governed by Crim.R. 52(B) because the defendant did not raise the error in the trial court. See *Hill*, 92 Ohio St.3d at 199, 749 N.E.2d 274; *Johnson*, 520 U.S. at 466, 117 S.Ct. 1544, 137 L.Ed.2d 718. This caution is born of sound policy. For to hold that an error is structural even when the defendant does not bring the error to the attention of the trial court would be to encourage defendants to remain silent at trial only later to raise the error on appeal where the conviction would be automatically reversed. We believe that our holdings should

foster rather than thwart judicial economy by providing incentives (and not disincentives) for the defendant to raise all errors in the trial court-where, in many cases, such errors can be easily corrected.

101 Ohio St.3d 118, 802 N.E.2d 643, 2004-Ohio-297, ¶23. Thus, the defendant bears the burden of demonstrating that a plain error affected his substantial rights and, in addition that the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508(1993); *State v. Perry,* 101 Ohio St.3d at 120, 802 N.E.2d 643. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240(2002); *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph three of the syllabus*; Perry,* supra, at 118, 802 N.E.2d at 646.

{¶33} Under the circumstances of the case at bar, there is nothing in the record to show that Brown was prejudiced. As we discussed in our disposition of Brown's first and second assignments of error, there was overwhelming evidence of the fleeing and eluding charge. In the instant case, it was erroneous for the trial court not to instruct the jury upon the completion of arguments, as required by Crim.R. 30 and *State v. Comen, supra.* However, we conclude, beyond a reasonable doubt, that the procedure employed by the trial court did not contribute to Brown's convictions. The court did give the jury full and complete instructions that were relevant and necessary to its weighing of the evidence and discharging its duty as fact finder. *State v. Owens*, 91 Ohio App.3d 479, 486, 632 N.E.2d 1301(1st Dist. 1993).

{¶34} Brown's third assignment of error is overruled.

IV.

{¶35} In his fourth assignment of error, Brown argues that he was denied effective assistance of counsel. Specifically, Brown contends that counsel was ineffective in failing to object to the trial court's reading of the jury instructions before closing arguments and not repeating them after closing arguments.

{¶36} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180(1993); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

{¶37} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. *Bradley*, 42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.

{¶38} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. Prejudice warranting reversal must be such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. A court making the prejudice inquiry must ask if the defendant has met the burden of showing

that the decision reached would "reasonably likely been different" absent the errors. *Strickland*, 466 U. S. 695, 696. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, supra; *Bradley*, supra.

**{¶39}** The claim raised by Brown does not rise to the level of prejudicial error necessary to find that he was deprived of a fair trial. Having reviewed the record that Brown cites in support of his claim that he was denied effective assistance of counsel, we find Brown was not prejudiced by defense counsel's representation of him. The result of the trial was not unreliable nor were the proceedings fundamentally unfair because of the performance of defense counsel. Brown has failed to demonstrate that there exists a reasonable probability that, had trial counsel objected to trial court's procedure for giving jury instructions the result of his trial would have been different. As we have noted, any error in the procedure employed by the trial court was harmless beyond a reasonable doubt.

**{¶40}** Because we have found only harmless error in this case, we find Brown has not demonstrated that he was prejudiced by trial counsel's performance.

**{¶41}** Brown's fourth assignment of error is overruled.

V.

**{¶42}** In his fifth assignment of error, Brown avers that the trial court should have listed a specific amount at sentencing for restitution owed. The state concedes the trial court erred by not including a specific amount when ordering restitution.

**{¶43}** The court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information.

R.C. 2929.18(A)(1). However, the amount of the restitution must be supported by competent, credible evidence in the record from which the court can discern the amount of the restitution to a reasonable degree of certainty. *State v. Sommer*, 14 Ohio App.3d 421, 2003-Ohio-5022, 797 N.E.2d 559(5th Dist. 2003); *State v. Gears*, 135 Ohio App.3d 297, 300, 733 N.E.2d 683 (6th Dist. 1999).

{¶44} The trial court erred in ordering restitution since there was no documentation or testimony at the sentencing hearing of any actual economic loss suffered by the victim.

{¶45}  Brown's fifth assignment of error is granted. The matter is remanded for a restitution hearing.

VI.

{¶46} In his sixth assignment of error, Brown contends that the trial court erred when it failed to merge the two counts in this case as allied offenses.

{¶47} R.C. 2941.25, Multiple counts states:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain

counts for all such offenses, and the defendant may be convicted of all of them.

**{¶48}** In *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Ohio Supreme Court revised its allied-offense jurisprudence. The *Johnson* court overruled *State v. Rance,* 85 Ohio St.3d 632, 710 N.E.2d 699(1999), "to the extent that it calls for a comparison of statutory elements solely in the abstract under R.C. 2941.25." The Court was unanimous in its judgment and the syllabus, "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered. (*State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, overruled.)" However, the Court could not agree on how the courts should apply that syllabus holding. The *Johnson* case lacks a majority opinion, containing instead two plurality opinions, and a separate concurrence in the judgment and syllabus only. *State v. Helms*, 7th Dist. No. 08 MA 199, 2012-Ohio-1147, ¶71 (DeGenaro, J., concurring in part and dissenting in part).

**{¶49}** Justice Brown's plurality opinion sets forth a new two-part test for determining whether offenses are allied offenses of similar import under R.C. 2941.25. The first inquiry focuses on whether it is possible to commit both offenses with the same conduct. Id. at ¶ 48, 710 N.E.2d 699. It is not necessary that the commission of one offense will *always* result in the commission of the other. Id. Rather, the question is whether it is *possible* for both offenses to be committed by the same conduct. Id.*,* quoting *State v. Blankenship*, 38 Ohio St.3d 116, 119, 526 N.E.2d 816(1988). Conversely, if the commission of one offense will *never* result in the commission of the other, the offenses will not merge. *Johnson* at ¶ 51.

**{¶50}** If it is possible to commit both offenses with the same conduct, the court must next determine whether the offenses were in fact committed by a single act, performed with a single state of mind. Id. at ¶ 49, quoting *State v. Brown,* 119 Ohio St.3d 447, 895 N.E.2d 149, 2008-Ohio-4569, ¶ 50 (Lanzinger, J., concurring in judgment only). If so, the offenses are allied offenses of similar import and must be merged. *Johnson* at ¶ 50. On the other hand, if the offenses are committed separately or with a separate animus, the offenses will not merge. Id. at ¶ 51.

**{¶51}** Under Justice Brown's plurality opinion in Johnson, "the court need not perform any hypothetical or abstract comparison of the offenses at issue in order to conclude that the offenses are subject to merger." Id. at ¶ 47, 942 N.E. 2d 1061. Rather, the court simply must ask whether the defendant committed the offenses by the same conduct. *Id.*

**{¶52}** In the case at bar, the jury found with respect to the criminal tools charge that the "prosecutor did prove beyond a reasonable doubt that the pickup was intended to be used in the commission of a felony." (2T. at 377). At the sentencing hearing, the trial court made the following observation,

> For the criminal tools, here I'm talking to a person who's already had Federal drug convictions and is now running around with a truck specifically adapted for drug trafficking. Obviously, it's a very lucrative business for you because you have this $45,000 for which you have no other explanation and no effort to prove another explanation for. Consequently I believe that the twelve months I'm going to sentence you to for that crime should be done consecutively. That's because of your

history of criminal conduct demonstrates a consecutive sentence is necessary to protect the public. (2T. at 386).

**{¶53}** In the case at bar, the drug sniffing canine, Hera, alerted on the area between the left rear tire and cab area. Hera also alerted on the money from the Crown Royal bag. The troopers pried off the false bottom of the bed, which was hiding a four-inch deep bed beneath it. Inside the bed were duct tape, a broom handle and bleach. There were also several air fresheners in the cab. Testimony was presented that bleach and air fresheners are used by drug smugglers to hide the smell of drugs. Duct tape and a broom handle can typically be used to store and retrieve drugs. Brown had $45,000 in cash in the truck.

**{¶54}** Under R.C. 2941.25(B), "animus" is defined as "purpose or, more properly, immediate motive." *State v. Logan,* 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979). If the defendant acted with the same purpose, intent, or motive, the animus is identical for the offenses. *State v. Lewis,* 12th Dist. No. CA2008–10–045, 2012–Ohio–885, ¶13; *State v. Cowan,* 8th Dist. No. 97877, 2012-Ohio-5723, ¶37.

**{¶55}** The evidence, if believed, indicates that Brown possessed the vehicle with the intent to use it for transporting and/or concealing marijuana. Accordingly, Brown had a separate purpose, intent, or motive in his possession of the truck than when fleeing the officers.

**{¶56}** Brown's sixth assignment of error is overruled.

{¶57} For all the foregoing reasons, the judgment of the Richland County Court of Common Pleas is affirmed in part, vacated in part, and remanded. This decision in no way affects the guilty verdicts issued by the court. All of Brown's convictions are affirmed. The portion of the trial court's sentencing entry ordering payment of restitution is vacated, and this case is remanded for further proceedings regarding the issue of restitution.

By Gwin, P.J.,

Farmer, J., and

Wise, J., concur

_____

HON. W. SCOTT GWIN

_____

HON. SHEILA G. FARMER

_____

HON. JOHN W. WISE

WSG:clw 0624

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                          :
                                       :
              Plaintiff-Appellee       :
                                       :
                                       :
-vs-                                   :        JUDGMENT ENTRY
                                       :
WILLIAM G. BROWN                       :
                                       :
                                       :
              Defendant-Appellant      :        CASE NO. 12CA63


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Richland County Court of Common Pleas is affirmed in part, vacated in part, and remanded. This decision in no way affects the guilty verdicts issued by the court. All of Brown's convictions are affirmed. The portion of the trial court's sentencing entry ordering payment of restitution is vacated, and this case is remanded for further proceedings regarding the issue of restitution.  Costs divided equally between the parties.


_____
HON. W. SCOTT GWIN

_____
HON. SHEILA G. FARMER

_____
HON. JOHN W. WISE